EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | |
|---|---|
| Gilda Marie Santos Iglesias<br><br>Peticionaria<br><br><br>v.<br><br>Lester Lugo Oliveras<br><br>Recurrido | Certiorari<br><br>2023 TSPR 83<br><br>212 DPR ___ |

Número del Caso: AC-2023-0013


Fecha: 28 de junio de 2023


Tribunal de Apelaciones:

    Panel IX


Abogadas de la parte peticionaria:

    Lcda. Adamarys Feliciano Matos
    Lcda. Almaris Falero Durán
    Lcda. Janice Rodríguez Zayas




Materia: Resolución del Tribunal con Voto Particulares de Conformidad y Votos Particulares Disidentes.



Este documento está sujeto a los cambios y correcciones del proceso de compilación y publicación oficial de las decisiones del Tribunal Supremo. Su distribución electrónica se hace como un servicio público a la comunidad.

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Gilda Marie Santos Iglesias<br><br>    Peticionaria<br><br>        v.<br><br>Lester Lugo Oliveras<br><br>    Recurrido | | AC-2023-0013 |

RESOLUCIÓN

En San Juan, Puerto Rico, a 28 de junio de 2023.

Acogido el escrito presentado en este caso como una petición de *certiorari*, se provee no ha lugar.

Lo acordó el Tribunal y certifica el Secretario del Tribunal Supremo. El Juez Asociado señor Martínez Torres hace constar la siguiente expresión:

Estoy conforme con denegar la expedición del auto de certiorari por los mismos fundamentos que esbocé en mi Voto particular de conformidad en Cintrón Román v. Jiménez Echevarría y otros, 2023 TSPR 59, 211 DPR __ (2023).

El Juez Asociado señor Kolthoff Caraballo hace constar la siguiente expresión:

Por los fundamentos que expuse en *Cintrón Román v. Jiménez Echevarría y otros*, 2023 TSPR 59, 211 DPR __ (2023), proveería no ha lugar al recurso presentado.

La Jueza Asociada señora Pabón Charneco emitió un Voto Particular de Conformidad al que se unen el Juez Asociado señor Rivera García y el Juez Asociado señor Feliberti Cintrón. La Jueza Presidenta Oronoz Rodríguez emitió un Voto Particular Disidente. El Juez Asociado señor Estrella Martínez emitió un Voto Particular Disidente. El Juez Asociado señor Colón Pérez emitió un Voto Particular Disidente.

Javier O. Sepúlveda Rodríguez
Secretario del Tribunal Supremo

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Gilda Marie Santos Iglesias<br><br>Peticionaria<br><br>v.<br><br>Lester Lugo Oliveras<br><br>Recurrido | AC-2023-0013 | |

Voto particular de conformidad emitido por la Jueza Asociada señora Pabón Charneco a la cual se unen los Jueces Asociados señores Rivera García y Feliberti Cintrón.

En San Juan, Puerto Rico, a 28 de junio de 2023.

Aunque por siglos no fuera cuestionado, hoy día es más frecuente que los tribunales analicemos controversias relacionadas al orden de los apellidos de un menor. Esto, ante la falta de normas claras que atiendan el conflicto entre dos progenitores a quienes paulatinamente nuestro ordenamiento les ha ido reconociendo iguales derechos. Como podemos observar, hay transformaciones sociales que no pueden ser ignoradas jurídicamente.

Por los fundamentos que expuse en mi voto particular de conformidad en *Cintrón Román v. Jiménez Echevarría y otros,* 2023 TSPR 59, 211 DPR ___ (2023), proveería no ha lugar al recurso presentado. Nuevamente, nuestro voto se da en cuanto al resultado y no los fundamentos.

En casos como el de autos, los tribunales debemos examinar la modificación de los apellidos de un menor inscrito por un progenitor al amparo del Art. 84 del Código Civil, *infra*, a la luz del interés óptimo del menor. Sin embargo, al no haberse presentado razones que afecten tal interés y que aconsejen un orden de apellidos sobre otro, recurriría al orden alfabético para atender la controversia. Por lo tanto, sostengo que corresponde que el menor sea inscrito con los apellidos en el orden "Lugo Santos".

Por otro lado, hago hincapié en que ya aceptada la filiación por los tribunales, corresponde reconocer todos los derechos y obligaciones ligados a la paternidad, y con particular premura: la obligación de alimentar. Esta obligación no puede quedar sujeta a los trámites judiciales relacionados con los apellidos del menor debido a la falta de consenso entre los progenitores y de legislación al respecto.

**I**

El 17 de marzo de 2021, la Sra. Gilda Marie Santos Iglesias (peticionaria o madre) presentó una Demanda sobre filiación contra el Sr. Lester Lugo Oliveras (recurrido o padre), por sí y en representación del menor. Sostuvo que el 6 de agosto de 2020 inscribió al menor sin el reconocimiento voluntario del padre. Expresó que el señor Lugo Oliveras le había indicado que lo reconocería, pero que al momento de registrarlo este se encontraba en el estado de Florida y ella desconocía su dirección en Estados Unidos. Por lo tanto,

sostuvo que el demandado se negaba a reconocer al menor de manera voluntaria. Asimismo, solicitó que el apellido materno se mantuviera en primer orden para no afectar los documentos ya existentes.

Por su parte, el señor Lugo Oliveras sostuvo que siempre ha estado dispuesto a reconocer al menor de forma voluntaria sin necesidad de pruebas de ADN, pero "no se ha podido concretar por circunstancias ajenas a su voluntad a saber falta de comunicación y los tiempos difíciles de la pandemia y trabajo". Aceptó que la pensión alimentaria le fuera impuesta conforme a las *Guías mandatorias para computar las pensiones alimentarias en Puerto Rico*. Con relación al apellido, expresó que el orden de los apellidos del menor debía decidirse en conjunto y no de forma unilateral, que su deseo es que el orden sea Lugo Santos, "y de ser necesario se tome su voz en consideración como padre del menor". Añadió que debido a la edad del menor, sus documentos pueden modificarse sin problema alguno.

El 12 de junio de 2021, el Tribunal de Primera Instancia emitió sentencia y declaró Ha Lugar la demanda de filiación y ordenó al Registro Demográfico a añadir al recurrido como padre legal del menor. Además, requirió que "[u]na vez se modifique el Certificado de Nacimiento las partes deben someter copia del mismo para establecer la pensión alimentaria y las relaciones paternofiliales".

En vista de que la determinación del foro de instancia no atendió el asunto del orden de los apellidos, la madre

solicitó que "el menor lleve primero el apellido materno y segundo el apellido paterno, ya que el demandado es una figura ausente, totalmente ajena y desconocida para el menor" y que este demostró falta de interés para completar el reconocimiento voluntario.

Por otra parte, el padre sostuvo que por "la pandemia no ha podido relacionarse con el menor, su deseo de fungir como padre está plasmado en el reconocimiento voluntario que realizó sin ningún titubeo, este desea poder iniciar las relaciones filiales y cumplir con la pensión alimentaria que corresponda". En cuanto a los apellidos, expresó que "[d]e permitir que uno de los padres en forma unilateral decida los apellidos o establezca el orden provocaría que el menor en el futuro sienta distinción entre su familia, hermanos y tíos, es palpable que esto no busca del bienestar óptimo del menor".

Finalmente, el 27 de agosto de 2021 el foro de instancia declaró No Ha Lugar la solicitud de la madre por entender que era una decisión unilateral y no conjunta entre progenitores. Concluyó que ante la corta edad del menor y habiendo sido reconocido voluntariamente por su padre, los motivos presentados por la madre no eran razonables ni suficientes para justificar tal solicitud.

Mediante Moción de Reconsideración, la madre sostuvo que el reconocimiento del recurrido no constituyó uno voluntario, pues requirió la presentación de una acción de filiación; que no se celebró una vista para que pudiera

presentar prueba que justificara el orden de apellidos solicitado, y que no ha habido acuerdo porque no existe comunicación con el señor Lugo Olivera. Por último, solicitó que no se esperase al cambio en el certificado de nacimiento para referirlo a la Examinadora de Pensiones Alimentarias. Al ser denegada su solicitud, y luego de varios trámites procesales, la peticionaria acudió ante el Tribunal de Apelaciones.

El foro apelativo intermedio confirmó la inscripción del menor con los apellidos en el orden "Lugo Santos" tras concluir que el foro primario resolvió correctamente en el ejercicio de su discreción. Sin embargo, debido al alto interés público sobre los asuntos relacionados a los alimentos de los menores, concluyó que el foro *a quo* incurrió en error al condicionar la pensión alimentaria a la presentación del certificado de nacimiento enmendado.

Inconforme, la peticionaria acudió ante nos.[1] Evaluado el recurso presentado, este Tribunal dictó resolución denegando la expedición del auto.

---

[1] La peticionaria presenta los señalamientos de error siguientes:

Erró el Tribunal de Apelaciones al aplicar lo resuelto en *Cintrón Román v. Jiménez Echevarría y otros*, KLAN20220044[,] en ánimo de lograr una "consistencia institucional", apartándose de lo resuelto por otros paneles del Tribunal de Apelaciones en *Aubret Martínez v. Vega Gómez*[,] KLRA202200455 y *Ex parte Departamento de Justicia* [,] KLCE202200046.

Erró el Tribunal de Apelaciones al confirmar la determinación del Tribunal de Primera Instancia denegando la petición de la [señora Santos] para que el menor durante una acción filiatoria continuara inscrito con el apellido materno en primer lugar amparando su decisión en [el] derecho aplicable a una modificación de nombre y *Roig Pou y otros v. Registro Demográfico*, 203 DPR 346 (2019).

Erró el Tribunal de Apelaciones al confirmar la sentencia dictada por el Tribunal de Primera Instancia amparándose en que el uso y costumbre determina el orden de los apellidos de un menor, perpetuando así la

**II**

Sin interés de repetir nuestras expresiones en *Cintrón Román v. Jiménez Echevarría y otros, supra,* insistimos en el derecho de toda persona a tener, reclamar y proteger su nombre. Este incluye el primer apellido de ambos progenitores, de forma tal que se pueda exteriorizar el vínculo filiatorio entre estos.

Así, en casos como el de autos, el Art. 84 del Código Civil, 31 LPRA sec. 5543, ordena que un menor sea inscrito con los dos apellidos del progenitor que lo reconoce, pero uno de los apellidos se sustituirá de ocurrir un reconocimiento posterior.[2] En vista de que no se especifica orden alguno para esta sustitución, la igualdad entre progenitores, así como, el ejercicio conjunto de la patria potestad reconocidos por nuestro Ordenamiento, los progenitores pueden escoger el orden de los apellidos con el que inscribirán a su progenie. *Roig Pou y otros v. Reg. Demográfico*, 203 DPR 346 (2019).

Sin embargo, cuando no hay consenso entre los progenitores, corresponde examinar la sustitución y orden de los apellidos a la luz del interés óptimo del menor. Así, cuando tampoco existen razones que aconsejen un orden u otro, corresponde utilizar un mecanismo objetivo y aleatorio para

---

práctica discriminatoria en contra de la mujer y violentando sus derechos fundamentales a la igual protección de las leyes.

[2] El Art. 19-A de la Ley Núm. 24 de 22 de abril de 1931, según enmendada, conocida como Ley del Registro Demográfico de Puerto Rico, 24 LPRA sec. 1133a, atiende el reconocimiento e inscripción por un solo progenitor conforme lo dispuesto en el Art. 84 del Código Civil, *supra.*

resolver la controversia presentada. En casos como este, considero apropiado el uso del orden alfabético.

### III

En el caso de autos, la madre solicitó que su apellido conste en primer orden para no afectar los documentos existentes del menor. Asimismo, sostuvo que el padre ha sido una figura ausente y desconocida para este, y que demostró falta de interés para completar el reconocimiento voluntario requiriendo, por consiguiente, que se activaran los mecanismos procesales.

Por otro lado, el padre sostuvo su interés en reconocer y relacionarse con el menor. Expresó que residir fuera de Puerto Rico y las restricciones de la pandemia al momento del nacimiento fueron situaciones fuera de su control que le impidieron reconocerle oportunamente. También expresó que ante la falta de acuerdo y a pesar de tener preferencia por que su apellido esté en primer orden, tal determinación debe hacerse considerando el bienestar óptimo del menor. En cuanto a este aspecto, sostuvo que era en favor de este interés que el menor cuente con el mismo apellido que sus hermanos y otros familiares paternos.

Ciertamente, no hay consenso entre los progenitores sobre el orden de los apellidos, pero tanto la madre como el padre reconocen que esta decisión debe estar basada en el mejor bienestar del menor. Por lo tanto, ante el reconocimiento de la paridad de derechos entre progenitores por el ordenamiento jurídico y la falta de legislación sobre

este particular, no procede priorizar automáticamente el apellido materno sobre el paterno solamente porque fuera inscrito conforme al Art. 84 del Código Civil, supra, ni tampoco priorizar el apellido paterno sobre el materno por ser la práctica acostumbrada por el Registro Demográfico. Por el contrario, procede que el tribunal examine este asunto a la luz del interés óptimo del menor.

Del expediente y los argumentos de ambas partes, surge que el nacimiento del menor ocurre a comienzos del cierre por la pandemia por Covid 19. La madre aceptó que el padre había asegurado que reconocería al menor y que este se encontraba fuera de Puerto Rico al momento de la inscripción. La comunicación entre ambos progenitores es a lo sumo limitada. Siendo un infante, el padre lo reconoce y acepta su responsabilidad de proveerle alimento y relacionarse con él. Sin embargo, el cumplimiento con estas responsabilidades quedó obstaculizado ante la determinación del tribunal de que "[u]na vez se modifique el Certificado de Nacimiento las partes deben someter copia del mismo para establecer la pensión alimentaria y las relaciones paternofiliales".

En vista de los hechos particulares del caso de autos, consideramos que no se presentaron razones que aconsejen un orden de apellidos sobre otro. Por lo tanto, recurriría al orden alfabético para atender esta controversia por lo que correspondería que el menor sea inscrito con los apellidos en el orden "Lugo Santos".

Por último, y como expresáramos en *Cintrón Román v. Jiménez Echevarría y otros, supra*, "el apellido, por sí mismo, no es necesario para que se establezca la filiación," y los derechos y obligaciones que esta conlleva. Por lo tanto, los tribunales no deben condicionar los alimentos ni las relaciones paternofiliales con un menor a los cambios en el Registro Demográfico.

## IV

Por los fundamentos antes expresados, confirmaría la Sentencia del Tribunal de Apelaciones que ordenó que el menor sea inscrito con los apellidos en el orden Lugo Santos.


Mildred G. Pabón Charneco
Jueza Asociada

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

| | | |
|---|---|---|
| Gilda Marie Santos Iglesias | | |
| Peticionaria | | |
| v. | AC-2023-0013 | |
| Lester Lugo Oliveras | | |
| Recurrido | | |

La Jueza Presidenta Oronoz Rodríguez emitió un Voto Particular Disidente.

> **"¿[P]uede una 'costumbre' con bases en el discrimen ser fuente jurídica para la solución de una controversia de Derecho? Claramente, no. No solamente porque no representa los valores modernos imperantes en nuestra sociedad, sino porque es diametralmente opuesta a los principios que inspiraron la adopción de nuestra Ley Superior".[1]**

En San Juan, Puerto Rico, a 28 de junio de 2023.

Existen múltiples manifestaciones de inequidad y trato desigual basadas en el género y sexo de una persona. No sorprende, pero sí indigna, que la visión

---

[1] Cintrón Román v. Jiménez Echevarría, 2023 TSPR 59, 211 DPR ___ (2023) (Expresión disidente, J. Oronoz Rodríguez). Véase también: M. Fraticelli Torres, Relevancia actual y secuela jurisprudencial de Ocasio v. Díaz, 50 Rev. Der. P.R. 101, 121-122 (2010) ("El orden que exige la colocación del apellido paterno antes que el materno preserva vestigios de discriminación por género que el Derecho debe proscribir".).

androcéntrica que se proliferó a través de nuestra historia haya tenido un efecto sobre las normas sociales y jurídicas que rigen en nuestro ordenamiento. Una de estas costumbres está relacionada con el orden en el cual se inscriben los apellidos de una persona al nacer.[2] Históricamente, en Puerto Rico y en otras jurisdicciones, se ha impuesto el apellido paterno sobre el materno. Esto, como reflejo de la visión del hombre como la cabeza de la familia. Nuestra Asamblea Legislativa ha tomado algunos pasos afirmativos para eliminar estas prácticas —inherentemente discriminatorias— de la normativa jurídica que rige los distintos aspectos de nuestras vidas.

En particular, el historial legislativo de las normas que gobiernan el proceso de inscripción en Puerto Rico revela que la Asamblea Legislativa se ha preocupado por el trato desigual entre los hombres y las mujeres, que se ha alejado de normas que favorecen al hombre sobre la mujer y ha rechazado codificar costumbres de esta naturaleza. Es por esto que no puedo estar de acuerdo con el proceder de esta Curia al, nuevamente, negarse a expedir un recurso que nos permitiría acabar con esta práctica netamente

---

[2] Lamentablemente, este recurso constituye una instancia más de las prácticas nocivas de nuestra sociedad sobre la cuales llamé la atención en Cintrón Román v. Jiménez Echevarría, 2023 TSPR 59, 211 DPR ___ (2023) (*Voto particular disidente*, pág. 1, J. Oronoz Rodríguez):

> Vivimos en un mundo plagado de manifestaciones de inequidad y trato desigual basadas en género, algunas solapadas y otras patentemente visibles. Esas mismas manifestaciones o visión androcéntrica han determinado por siglos las normas jurídicas y sociales que rigen en nuestro ordenamiento, incluyendo la que determina el orden de los apellidos de una criatura. Íd.

discriminatoria. Contrario a lo que hacemos hoy, debimos corregir los errores evidentes del Tribunal de Apelaciones y del Tribunal de Primera Instancia, y proveer una interpretación que sea consistente con los derechos humanos, con nuestra Constitución y con la intención y el propósito de la Asamblea Legislativa en este tema.

**I.**

Este caso se originó el 17 de marzo de 2021, cuando la Sra. Gilda Marie Santos Iglesias (señora Santos Iglesias) presentó una demanda sobre filiación, por sí y en representación de su hijo, contra el Sr. Lester Lugo Oliveras (señor Lugo Oliveras). En la demanda, la señora Santos Iglesias alegó que las partes sostuvieron una relación sentimental, que ella había quedado embarazada como producto de ello y que había dado a luz el 11 de julio de 2020. Además, adujo que el señor Lugo Oliveras había expresado inicialmente que reconocería al menor, pero que al momento de someter los documentos y cumplir con los requisitos y procedimientos ante el Registro Demográfico, este no culminó el proceso y se mudó de Puerto Rico al estado de la Florida.

Por esta razón, la señora Santos Iglesias inscribió a su hijo en el Registro Demográfico sin el reconocimiento voluntario del padre y con un solo apellido, siendo este el apellido materno "Santos". Luego, solicitó que se le ordenase al señor Lugo Oliveras a que se realizara las pruebas de ADN correspondientes para establecer el vínculo biológico con el menor; que se procediera a establecer la filiación tras

obtener los resultados de las pruebas; que se estableciera una pensión de alimentos retroactiva; que se ordenara al Registro Demográfico a que corrigiera el certificado de nacimiento para incluir el nombre del padre del menor y, finalmente, solicitó que se le ordenara a esa dependencia mantener en el referido certificado el apellido materno primero y se hiciera constar el paterno en el segundo lugar.

El señor Lugo Oliveras contestó la demanda y aceptó ser el padre del menor. Además, a pesar de no dar una explicación de por qué no reconoció voluntariamente al menor al momento de este nacer, alegó que siempre ha estado dispuesto a reconocerlo. Finalmente, expresó no estar de acuerdo con que el apellido materno se mantuviera en el primer lugar, tras argumentar que inscribir al menor con el apellido materno fue una decisión unilateral de la madre. Por el contrario, su deseo era que los apellidos del menor fuesen "Lugo Santos", con el apellido paterno en el primer lugar. Añadió que en la decisión del orden de los apellidos era necesario que se tomase en consideración su voz como padre del menor.

Consecuentemente, el 28 de julio de 2021 el Tribunal de Primera Instancia emitió una resolución mediante la cual ordenó al Registro Demográfico a modificar el certificado de nacimiento para que se añadiera al señor Lugo Oliveras como padre legal del menor. El 12 de agosto de 2021 la señora Santos Iglesias presentó una moción indicando que quedaba pendiente de adjudicar el asunto sobre el orden de los apellidos. Tras concederle un término a ambas partes para que

se expresaran, el foro primario ordenó al Registro Demográfico a modificar el certificado de nacimiento para que el apellido paterno figurara primero y el materno segundo. Además, el Tribunal de Primera Instancia condicionó la fijación de una pensión alimentaria al menor a la presentación del certificado de nacimiento enmendado. Ante esta determinación, la señora Santos Iglesias solicitó reconsideración, la cual se declaró "no ha lugar".

Inconforme, la señora Santos Iglesias presentó un recurso de apelación ante el Tribunal de Apelaciones. Como fundamento para la solicitud de que el menor permaneciera con el apellido materno primero, la señora Santos Iglesias aludió a varios factores relacionados al mejor interés del menor. Entre estos, el hecho de que el padre nunca se ha ocupado del niño, es una figura paterna ausente, no vive en Puerto Rico con el menor y negó públicamente al menor en un programa televisivo en el cual participó. Además, enfatizó que el reconocimiento del menor por parte del señor Lugo Oliveras no fue uno voluntario, pues se tuvo que incoar una acción judicial de filiación para que este lo reconociera. Finalmente, cuestionó el proceder del foro primario en cuanto a que condicionó la fijación de la pensión alimentaria a que se hiciera el cambio de orden de los apellidos en el certificado de nacimiento.

El señor Lugo Oliveras reiteró su oposición a que el apellido materno se mantuviera en el primer lugar. Alegó que el orden de los apellidos del menor "requiere una decisión

consensual entre ambos padres, cosa que no aplica en el caso de autos. Aquí la demandante pretende en un acto unilateral imponer el orden de los apellidos".

Contando con la comparecencia de ambas partes, el 7 de febrero de 2023 el foro apelativo intermedio emitió una Sentencia mediante la cual confirmó en parte la determinación del foro primario. Concluyó que, aunque no existía una ley que regulase el orden de los apellidos en el certificado de nacimiento de un menor, procedía resolver conforme dispone la costumbre en Puerto Rico. Sobre esto, el foro apelativo hizo referencia al caso <u>Cintrón Román v. Jiménez Echevarría</u>, KLAN202200644, en el cual otro panel del Tribunal de Apelaciones recurrió a la costumbre como fuente de derecho para resolver una controversia similar sobre el orden de apellidos de un menor.[3] A su vez, determinó que el Tribunal de Primera Instancia actuó correctamente, en el ejercicio de su discreción y sin necesidad de celebrar una vista. Esto, pues sostuvo que los argumentos de la señora Santos Iglesias sobre que era la única que cuidaba y le daba cariño al menor y que el señor Lugo Oliveras era un padre ausente, no eran suficientes para sustentar su petición sobre que su apellido constase en el primer sitial. Por el contrario, expresó que

---

[3] Me resulta importante enfatizar que en este caso no se pautó un precedente sobre norma alguna, pues las Sentencias del Tribunal de Apelaciones no conllevan esa consecuencia. Además, en <u>Cintrón Román v. Jiménez Echevarría</u>, 2023 TSPR 59, 211 DPR ___ (2023), tampoco se pautó un precedente. Esto así, pues una mayoría del Tribunal votó para denegar el recurso. Curiosamente, de los Votos Particulares que se emitieron surge que una mayoría del Tribunal sí estuvo de acuerdo con que el fundamento que el Tribunal de Apelaciones utilizó para resolver la controversia fue errado y contrario a derecho.

"este proceder de modificar un nombre unilateralmente por parte de la Sra. Santos, sin duda es contrario al consenso familiar que este tipo de asunto debe observar". <u>Santos Iglesias v. Lugo Oliveras</u>, KLAN202100999, en la pág. 18 (7 de febrero de 2023). En cuanto a la pensión alimentaria a favor del menor, resolvió que el foro primario incidió al condicionar fijar una pensión alimentaria a la presentación del certificado de nacimiento enmendado.

La señora Santos Iglesias presentó un recurso de apelación ante este Tribunal cuestionando la determinación de cambiar el orden de los apellidos para reflejar el apellido paterno primero. En este, hizo referencia a las expresiones del Tribunal de Apelaciones sobre que "es incontrovertido que desde tiempo inmemorial rige en Puerto Rico el llamado sistema español de establecer el nombre de una persona, mediante el cual los progenitores seleccionan el primer nombre, acompañado a veces por un segundo e incluso un tercer nombre, seguido del apellido del padre y de la madre" y que la referida práctica, según el foro apelativo intermedio, no es contraria a la moral o al orden público. Sobre esto, la señora Santos Iglesias expresó que el tribunal está permitiendo que subsista en nuestra sociedad la organización patriarcal sobre todos los asuntos que componen o definen el derecho de familia y que, aun cuando la gestión judicial ha fortalecido el trato igualitario reconocido por la Constitución, todavía el discrimen se ve manifestado en la estructura de procesos e instituciones judiciales. Añadió a su argumento que el

proceso judicial no le ha proporcionado equidad, sino que, por el contrario, le ha impuesto continuidad a una costumbre que no se adapta a la nueva norma social y la diversidad en la composición familiar.

Por entender que la señora Santos Iglesias tiene la razón y el Tribunal de Apelaciones erró al recurrir a una costumbre discriminatoria, contraria a nuestra Constitución, y arraigada en el patriarcado, me veo obligada a disentir del curso de acción de no expedir este recurso para revocar al referido foro.

**II.**

En mi *Voto Particular Disidente* en <u>Cintrón Román v. Jiménez Echevarría</u>, 2023 TSPR 59, 211 DPR ___ (2023) consigné diversos fundamentos —principalmente constitucionales— por los cuales allí —al igual que aquí— el Tribunal de Apelaciones erró severamente al recurrir a una costumbre discriminatoria para disponer de la controversia. Aprovecho esta ocasión para suplementar ese pronunciamiento con unos apuntes adicionales.

La controversia ante nos requiere que auscultemos si nuestro ordenamiento jurídico exige que, ante el desacuerdo entre los progenitores, se inscriba a un menor con el apellido paterno en primer lugar seguido del materno. Para llegar a una contestación satisfactoria, debemos estudiar la historia de la normativa relevante a la inscripción de los nombres de las personas en Puerto Rico.

Indudablemente, el desarrollo de la legislación atinente a la inscripción de nombres de hijos e hijas está íntimamente

atado a la concepción que hemos tenido sobre las relaciones familiares, mediado por nuestro Derecho de Familia. Relacionado con este tema, la Comisión Judicial Especial para estudiar el Discrimen por Género en los Tribunales de Puerto Rico llevó a cabo un <u>Informe sobre el discrimen por razón de género en los tribunales de Puerto Rico</u> (Informe) en el 1995. En este informe, y en lo pertinente a la controversia que nos ocupa, se destacó que nuestro Derecho de Familia se distinguía por establecer:

> [U]n matrimonio indisoluble, celebrado con la mayor solemnidad entre un hombre y una mujer, que aportaban, por imperativo legal, sus talentos, capacidad productora y resultados de sus esfuerzos a una empresa comunitaria, donde **el marido actuaba, protegido por el manto de la ley, como único socio gestor de toda actividad económica y jurídica** generada durante su vigencia. **Este reconocimiento exaltaba el papel protagónico del hombre, siempre dominante**, en el campo doméstico, social, político y religioso. **La mujer debía total obediencia al marido, tenía que llevar su apellido** y seguirle donde quiera que fijan su residencia, someterse a la relación sexual, aunque fuese forzada, y cederle potestad exclusiva sobre sus hijos e hijas. <u>Informe sobre el discrimen por razón de género en los tribunales de Puerto Rico</u>, 1995, pág. 164.

El Informe extendió su crítica a normas arraigadas en costumbres machistas y patriarcales que regulan los nombres de las personas y de los hijos e hijas que se tienen en común:

> Un hecho que no debe pasar inadvertido, aunque parece no presentar objeciones particulares, es el uso de los apellidos paternos como el **patronímico que identifica a la familia**, siendo esta costumbre, elevada a rango jurídico, **la manifestación más obvia del dominio masculino en el seno familiar**. La ley no requiere que se coloque el apellido del padre antes del de la madre, pero nadie ha cuestionado

esa ubicación, porque social y culturalmente siempre se ha aceptado que así se haga. Íd., pág. 205.

Aquí, el Informe aludió a la norma establecida en el Art. 94 del Código Civil de 1930, 31 LPRA ant. sec. 287, el cual imponía como obligación a la mujer casada el uso del apellido de su marido. Sin embargo, la Asamblea Legislativa expresamente derogó este artículo en virtud de la Ley Núm. 93 de 9 de julio de 1985. En la Exposición de Motivos de esa ley, se expresaron las motivaciones que impulsaron a la Asamblea Legislativa a hacer un cambio transcendental en cómo se regulaban los apellidos de mujeres casadas:

> El Código Civil de Puerto Rico le impone como obligación a la mujer casada, el uso de apellido de su marido. La mujer profesional si contrae matrimonio a veces prefiere mantener el apellido de soltera, ya que es conocida por éste y le perjudicaría profesional y económicamente cambiarse el apellido por el del marido.
>
> La realidad actual de los matrimonios entre jóvenes y entre profesionales es que en ellos la mujer casada prefiere y retiene su apellido de soltera. Esta realidad fue expresada en el Informe Especial Núm. 2 Sobre la Mujer y la nueva Legislación de Derecho de Familia de 1977.
>
> Este sentir de la mujer puertorriqueña fundamenta la razón de la medida ya que **es a todas luces contrario a nuestro ordenamiento constitucional el imponer a la mujer la obligación de usar el apellido de su marido, cuando a éste no se le impone una obligación igual.**
>
> Esta Asamblea Legislativa entiende como política pública que **todo discrimen por razón de sexo que contenga nuestro ordenamiento jurídico, debe eliminarse.**

Para cumplir con esta política pública y evitar que se considere a la mujer un ser inferior o dependiente, debe derogarse este artículo. Exposición de Motivos de la Ley Núm. 93 de 9 de julio de 1985 (1985 Leyes de Puerto Rico 320-321)

**Como resultado, se puede observar que desde al menos el 1985 la Asamblea Legislativa ha reconocido que el trato desigual entre el hombre y la mujer en la normativa relacionada con los nombres de las personas es contrario a nuestra Constitución.**

El Informe comentó sobre esta derogación del artículo 94 del Código Civil de 1930, sin embargo, también expresó que "aún subsiste en nuestra sociedad la organización patriarcal sobre la familia: la presunción de la paternidad de las hijas e hijos nacidos en matrimonio, **el apellido paterno como patronímico de la unidad familiar** y la delegación casi exclusiva a las mujeres de la atención y satisfacción de necesidades de los miembros del grupo familiar, marido e hijas e hijos". Informe sobre el discrimen por razón de género en los tribunales de Puerto Rico, 1995, pág. 207. Además, particularizó cómo la madre, sobre todo la madre soltera, es quien tiene que cargar con el gravamen emocional, social y económico de los hijos y las hijas porque los procesos legislativos y judiciales no propician eficazmente la repartición equitativa de responsabilidades y obligaciones entre la madre y el padre. Finalmente, concluyó que, para corregir esta problemática, "**los tribunales deben desarrollar esquemas de análisis y de evaluación judicial que tomen en cuenta las diferencias reales que existen en nuestra sociedad**

**en cuanto al trato que reciben los hombres y las mujeres** en sus distintas manifestaciones sociales, de modo que puedan propiciar soluciones que fomenten la distribución equitativa de responsabilidades entre ambos géneros y un tratamiento más justo para unos y otras". Íd.

Ciertamente, tras la aprobación del Código Civil de 2020 se han visto grandes cambios en nuestro ordenamiento jurídico, muchos de estos con la intención de actualizar sus disposiciones decimonónicas en aras de atemperar este cuerpo normativo a los cambios y a las realidades actuales de Puerto Rico. Esto así, porque nuestro Código Civil, más allá de ser una reglamentación o una serie de normas, es un reflejo de las características que nos constituyen como sociedad y de los valores que en común estimamos y aceptamos como fundamentales en el transcurso de nuestras vidas en comunidad. Exposición de Motivos de la Ley Núm. 55-2020 (2020 [Parte 1] Leyes de Puerto Rico 593, 594). Además, la Asamblea Legislativa reitera que la realidad social y jurídica de Puerto Rico, así como las relaciones familiares, personales, sociales y económicas en el año 1930, eran muy distintas a las de hoy. Íd.

Esta motivación por dejar en el pasado normas, y las costumbres que dieron luz a estas, arraigadas en el patriarcado y patentemente machistas, se refleja claramente en el nuevo artículo 83 y los comentarios que se hicieron en el Memorial Explicativo del Borrador del Código Civil de 2020. El artículo 83 establece ahora que "[e]l nombre de una persona

comprende el nombre propio o individual unido al primer apellido de sus progenitores". Nótese que el referido artículo no hace referencia alguna al orden en que se inscribirán los apellidos maternos y paternos. Sin embargo, la Asamblea Legislativa expresó de manera inequívoca tanto el propósito como el objetivo del lenguaje utilizado en el artículo 83. Sobre esto, en el Memorial Explicativo del Borrador se hicieron las siguientes expresiones:

> El Art. 19(3) de la Ley Núm. 24 de 22 de abril de 1931, subsiguientemente enmendada, 24 LPRA Sec. 1133, exige la inclusión del nombre y los apellidos del padre y de la madre en el certificado de nacimiento o de aquel que lo reconozca. Art. 20, 24 LPRA Sec. 1134. Se exige la inclusión en el certificado del apellido paterno y el materno, en ese orden, por práctica **administrativa, aunque no hay norma escrita que así lo exige** [...] **Ninguna disposición de ley expresamente requiere que se coloque primero el apellido del padre y luego el de la madre en el acta de nacimiento o en cualquier otro documento oficial.**
>
> [...]
>
> Como se afirma en el Estudio Preparatorio del Código Civil de Puerto Rico, pág. 243, "el concepto de apellido paterno como apellido familiar se acentuaba más cuando la mujer casada llevaba el apellido de su marido. Al derogarse el Artículo 94 del Código Civil de 1930, que disponía que la mujer usara el apellido del marido, la costumbre adoptada por muchas mujeres de llevar el apellido del marido con la preposición "de" o a través de la total sustitución del apellido propio como ocurre en la sociedad estadounidense y en muchas latinoamericanas, comenzó a desaparecer. Cada día más mujeres casadas conservan sus dos apellidos de soltera." **Ante el cambio social y jurídico, es propio cuestionarse si debe imponerse el orden tradicional en la inscripción de los apellidos, primero paterno y luego materno, o si ello refleja y perpetúa la dominación masculina sobre la mujer y la familia.**

**Varias convenciones internacionales favorecen el que se elimine toda connotación sexista en la asignación de nombres y apellidos a las personas.** Por ejemplo, el Artículo 16 de la Convención de Naciones Unidades de 18 de diciembre de 1979, recomienda que los Estados signatarios tomen las medidas necesarias para hacer desaparecer toda disposición sexista en el derecho del nombre; el Comité de Ministros del Consejo de Europa, desde 1978, en la Resolución 78/37 **recomienda a los Estados miembros que hagan desaparecer toda discriminación entre el hombre y la mujer en el régimen jurídico del nombre.**

**Incluso, el Tribunal Europeo de Derechos Humanos ha sancionado, en la sentencia de 22 de febrero de 1994, en el caso Burghartz C. Suisse, las discriminaciones sexistas en la elección de los apellidos.** M. Garay Aubán, <u>Código Civil 2020 y su Historial Legislativo: Artículos, Referencias, Concordancias, Notas del Compilador y Memoriales Explicativos</u>, 2<sup>da</sup> ed., Ediciones SITUM, 2021, T. I, Parte General, págs. 223-226. (Énfasis suplido).

Como se puede apreciar en estos comentarios, la Asamblea Legislativa no estableció en el Código Civil un orden particular al momento de inscribir los apellidos de una persona; por el contrario, reconoció que no existe una disposición de ley que impusiera ese orden. Entonces, **en vez de concretizar la costumbre como norma jurídica en el nuevo Código Civil, hizo una expresión clara cuestionando si, ante los cambios sociales y jurídicos que han ocurrido en Puerto Rico, la referida costumbre podría tener el efecto de perpetuar la dominación masculina sobre la mujer y la familia.**

**III.**

Como ya se ha reseñado, no hay controversia sobre el hecho de que no existe ninguna ley en Puerto Rico que

expresamente imponga un orden de inscripción en cuanto a los apellidos de una persona cuando los progenitores no se ponen de acuerdo. Por el contrario, la Asamblea Legislativa ha guardado silencio al respecto. Sin embargo, las implicaciones del silencio en el derecho pueden ser considerablemente amplias, abarcadoras y profundas, por lo cual estudiar el contexto en el cual se da el referido silencio es crucial. J. Farinacci Fernós, Hermenéutica Puertorriqueña: Cánones de Interpretación Jurídica, Puerto Rico, Editorial Interjuris, Editorial de la Universidad Interamericana de Puerto Rico, pág. 155. En su obra, el profesor Farinacci Fernós propone un análisis de dos etapas para auscultar el efecto que tiene el silencio de la Asamblea Legislativa con relación a una norma. En primer lugar, se debe considerar si la omisión fue intencional o inadvertida, lo cual se puede examinar del historial legislativo. Si se concluye que la omisión fue intencional, entonces "lo que procede es aplicar la voluntad legislativa" y honrar esa determinación. Íd., pág. 156.

En cuanto a la voluntad legislativa, el profesor Farinacci Fernós distingue entre varios conceptos, entre ellos "propósito" y "objetivo". El término propósito se refiere a las razones que motivaron al legislador a adoptar determinada medida; es decir, las ideas, preocupaciones o motivaciones del legislador que lo llevaron a aprobar una ley y otro texto normativo. Por tanto, el propósito de un texto legal se refiere a los sucesos y las circunstancias que propiciaron su creación. De esa forma, podemos conectar el

texto legal objetivo a una realidad subjetiva particular; el problema o la situación que el ente legislativo quiso atender o resolver. Íd., pág. 181.

Por otro lado, el término *objetivo* o *fin* es el efecto que la Asamblea Legislativo quiso generar con la medida adoptada. Es el resultado deseado por el ente legislativo, de forma que el texto legal logre atender adecuadamente el mal social identificado. Por tanto, el efecto normativo otorgado por los tribunales al interpretar y construir un texto jurídico debe coincidir, idealmente, con aquel concebido por el ente legislativo. Así, el tribunal no lleva a cabo su propio ejercicio legislativo, sino que simplemente pone en práctica lo que el ente legislativo diseñó. El llamado *espíritu de la ley*, así como su *fin social*, forman parte de su objetivo. Esto se refiere a lo que la medida legislativa quiere lograr en la sociedad. Se trata de la versión óptima e ideal de la disposición legal correspondiente, la cual genera así un deber de los tribunales de intentar conciliar la versión real de la ley con esta modalidad óptima e idónea. Íd.

**IV.**

Al denegar la expedición del caso ante nos, una mayoría de este Tribunal está, *sub silentio*, permitiendo que nuestros tribunales continúen recurriendo a una costumbre con origen en una visión androcéntrica del hombre como jefe de la familia y la mujer como subordinada a este, para resolver controversias como las de autos. Por las mismas razones que

expresé en mi *Voto Particular Disidente* en Cintrón Román v. Jiménez Echevarría, supra, me veo precisada a disentir del curso de acción tomado en este caso. Sin embargo, entiendo necesario expresar lo siguiente.

Según ya he dicho, una costumbre no se puede elevar a norma jurídica cuando claramente discrimina por razón de sexo, ausente una razón apremiante del Estado. Ello, entre otras razones, porque esa distinción sin base o razón está expresamente prohibida por nuestra Constitución. Hoy añado que un análisis hermenéutico nos lleva a la misma conclusión; a saber: que la Asamblea Legislativa rechazó que la referida costumbre se eleve a norma jurídica.

En cuanto al primer paso del análisis que estamos llamados a realizar, resulta evidente que el silencio de la Asamblea Legislativa en cuanto al orden de los apellidos de una persona ha sido intencional. Esto así, pues, como reseñé anteriormente, del Memorial Explicativo del Borrador del Código Civil del 2020 surge que la Asamblea Legislativa discutió el hecho de que la costumbre en Puerto Rico ha sido imponer la inscripción del apellido paterno primero y el materno segundo, expresó críticas al respecto y reseñó varios casos de tribunales extranjeros que han determinado que normas similares son discriminatorias y sexistas. En consideración de la discusión extensa que se tuvo en el Memorial Explicativo del Borrador del Código Civil de 2020 sobre esta norma, no debe caber duda de que el silencio de la

Asamblea Legislativa sobre la referida norma en el texto del artículo 83 fue intencional.

Entonces, resta determinar, en segundo lugar, cuál fue la voluntad de la Asamblea Legislativa al aprobar el lenguaje del artículo 83 del Código Civil de 2020. En cuanto al propósito de la Asamblea Legislativa, dígase el problema o la situación que el ente legislativo quiso atender o resolver, podemos recurrir a las múltiples expresiones que se han hecho sobre los orígenes de la costumbre en cuestión. Como ya vimos, en el Memorial Explicativo del Borrador del Código Civil de 2020 la Asamblea Legislativa expresó que "[a]nte el cambio social y jurídico, es propio cuestionarse si debe imponerse el orden tradicional en la inscripción de los apellidos, primero paterno y luego materno, o si ello refleja y perpetúa la dominación masculina sobre la mujer y la familia". Es decir, el problema o situación que la Asamblea Legislativa quiso atender en su redacción del artículo 83 del Código Civil de 2020 fue, en parte, la dominación masculina sobre la mujer y la familia. Es más, el hecho de que el propósito de la Asamblea Legislativa fue atender el problema de la concretización como norma jurídica de una costumbre discriminatoria y arraigada en el patriarcado es innegable, pues esta citó en el Memorial Explicativo del Borrador del Código Civil de 2020 al Informe sobre el discrimen por razón de género en los tribunales de Puerto Rico, en cuanto describe la costumbre como **"la manifestación más obvia del dominio masculino en el seno familiar"**.

El objetivo o fin de la Asamblea Legislativa, esto es, el resultado deseado del artículo 83 del Código Civil del 2020 y el efecto que se quiere que este logre en la sociedad, se puede extraer tanto del texto del Memorial Explicativo del Borrador del Código Civil del 2020 como de la tendencia general que ha tenido la Asamblea Legislativa, reflejado en la Exposición de Motivos de la Ley Núm. 93 de 9 de julio de 1985. Desde el 1985 la Asamblea Legislativa ha expresado que entiende como política pública que **todo discrimen por razón de sexo que contenga nuestro ordenamiento jurídico debe eliminarse para evitar que se considere a la mujer un ser inferior o dependiente.** Además, en el ejercicio de redactar y aprobar el Código Civil de 2020, la Asamblea Legislativa continuó legislando con el objetivo de erradicar toda connotación sexista en la asignación de nombres y apellidos a las personas, incluyendo las discriminaciones sexistas en la elección de los apellidos. No hay espacio para otra interpretación sobre el fin al cual la Asamblea Legislativa deseaba llegar, pues así lo expuso en el Memorial Explicativo del Borrador del Código Civil de 2020.

Tras llevar a cabo un análisis sosegado de la normativa pertinente a la controversia, y utilizando las herramientas hermenéuticas a nuestra disposición para descubrir el significado del silencio de la Asamblea Legislativa sobre el orden en el cual se deben inscribir los apellidos, es inexorable colegir que la Asamblea Legislativa excluyó la posibilidad de elevar a norma jurídica la costumbre sexista

de imponer el apellido paterno en el primer lugar y el materno en el segundo.

No puede ser que a pesar de que la Asamblea Legislativa manifestó su propósito e intención sobre el orden en el cual se deben inscribir los apellidos de una persona, nuestros tribunales aprovechen ese silencio intencional para imponer la misma costumbre que la Asamblea Legislativa rechazó al momento de redactar y aprobar nuestro Código Civil.

**V.**

Una vez más este Tribunal desaprovecha la oportunidad de aclarar el significado del vacío jurídico que aparenta existir con relación al orden en el cual los apellidos de una persona se deben inscribir cuando los progenitores no se ponen de acuerdo. Esto, **a pesar de que al menos seis jueces y juezas de este Alto Foro concluyen que el fundamento que utilizó el Tribunal de Apelaciones para resolver la controversia es errado en derecho.** Al rehusarnos a expedir este caso asentimos a que se resuelvan controversias jurídicas recurriendo a costumbres machistas, discriminatorias y que violan de forma manifiestamente humillante la dignidad de las mujeres y de sus hijos e hijas. En este caso no se puede recurrir ——como intentan hacer algunos de mis compañeros y compañera de estrado para justificar su voto—— a votar a favor del resultado abstrayéndonos de los fundamentos que emplearon los foros inferiores. ¡El resultado solo se da porque los foros inferiores indicaron que el apellido de la mujer no puede ir primero por la única razón de que es una mujer! En este caso,

si la decisión no estuvo basada en un argumento neutral, equitativo, no discriminatorio, **no se puede sostener.**

Recordemos además que fue como consecuencia de la ausencia del señor Lugo Oliveras en el proceso de inscripción de su hijo que la señora Santos Iglesias lo inscribió con el único apellido que podía, el suyo. A esto el señor Lugo Oliveras le llamó "un acto unilateral" que excluía su voz como padre del menor. Increíblemente, el Tribunal de Apelaciones le dio la razón al concluir que se trataba de un acto que "sin duda es contrario al consenso familiar que este tipo de asunto debe observar". ¿Acaso no es precisamente eso lo que pretende hacer el padre ahora? ¿No está pidiendo imponer unilateralmente, y sin el consentimiento de la madre, su voluntad con relación al orden de los apellidos? ¿Este acto no es igualmente reprochable por ser contrario al "consenso familiar" que se debe observar en este tipo de asunto, según indicó el Tribunal de Apelaciones?

Por otra parte, me gustaría saber en qué se basan mi compañera y algunos de mis compañeros de estrado para afirmar que no se presentaron razones que aconsejen, bajo el criterio del mejor bienestar del menor, un orden de apellidos sobre el otro. ¿Acaso olvidamos que la señora Santos Iglesias tuvo que instar una **acción legal** para obligar al señor Lugo Oliveras a reconocer a su hijo ya que éste, luego de que naciera el menor, se fue para Estados Unidos sin completar el proceso de inscribir a su hijo? ¿Se nos olvida también que la señora Santos Iglesias tuvo de **demandar** al señor Lugo Oliveras para

que asumiera su responsabilidad alimentaria, como padre que es, y aportara dinero y medios para sustentar a su hijo? De ahí la razón por la cual la criatura estaba inscrita con un solo apellido, el de su madre. La señora Santos Iglesias, desde que nació su bebé, ha sido la custodia, la que ha velado, alimentado y proporcionado sus cuidados y cariño. Lo mismo no se puede decir del señor Lugo Oliveras. Estos hechos no pueden obviarse al analizar la controversia. Sin embargo, esta conducta del señor Lugo Oliveras, **en clara contravención al mejor interés de su hijo**, fue premiada al imponer el apellido paterno en primer lugar y desplazar el de la madre. De hecho, el Tribunal de Apelaciones expresamente rechazó que el abandono del padre o los cuidados de la madre sean hechos jurídicamente pertinentes para concederle a esta última la primacía de su apellido en el certificado de nacimiento; único apellido que aparecía en el certificado de nacimiento hasta que se instó la acción legal.[4]

Lo más insólito es que existen soluciones prácticas, sencillas y neutrales que producen resultados justos y equitativos, que no toman en consideración el sexo de los progenitores —de ninguno de los dos— y que no discriminan contra la mujer, madre de la criatura. El proceder en este caso es aún más patentemente incorrecto tras evidenciar que

_____

[4] Reitero mi absoluto asombro con estas expresiones y con el análisis que llevó a semejante conclusión. Según consta en el expediente, una parte, su madre, ha actuado consistentemente para promover el mejor bienestar de la criatura y la otra, su progenitor, ha actuado consistentemente en detrimento del bienestar del menor. Si esto no es relevante para esos jueces del Tribunal de Apelaciones, francamente no sé qué lo es.

la Asamblea Legislativa ha apartado consciente, consistente y afirmativamente a nuestro ordenamiento jurídico de las costumbres discriminatorias de nuestro pasado.

Para clarificar, no propongo que se imponga como norma que al apellido materno se le dé preferencia y se inscriba primero. Esa sería la otra cara de la misma moneda. Pero tampoco puede proceder que el apellido paterno se imponga sin el consentimiento de la madre. No podemos ser tan evidentemente discriminatorios. Por eso es esencial que se utilice un mecanismo no discriminatorio cuando surja una disputa de esta naturaleza. Todos los días nuestros tribunales toman decisiones usando como criterio rector el mejor interés del menor; hoy nos encontramos con otra controversia en la cual debería regir ese criterio. La pregunta que los foros inferiores tenían que hacerse era: a base de los hechos particulares de este caso, ¿cuál es el mejor interés del menor? ¿Mantener el apellido materno en el primer lugar o desplazarlo y sustituirlo con el paterno? Para mí la respuesta es clara. No obstante, si otros jueces estiman que no teníamos elementos de juicio suficientes para tomar esa decisión, procedía devolver el caso al Tribunal de Primera Instancia para que celebrara una vista evidenciaria donde se desfilara prueba que le permitiera emitir una decisión utilizando el criterio no discriminatorio del mejor interés del menor.[5]

---

[5] Reitero, una vez más, que: "[a]l recurrir a una costumbre discriminatoria, machista y arraigada en el patriarcado en búsqueda de una solución a un problema jurídico, estamos dando un paso atrás en el

Lamentablemente, la señora Santos Iglesias no contará con ese beneficio, ni para sí ni para su niño, ya que supuestamente, jurídicamente debe prevalecer "un consenso familiar" y, a falta de ello, la decisión y preferencia unilateral del padre, lo cual responde a una visión discriminatoria del lugar de la mujer en la familia y la sociedad. Por estas razones, disiento enérgicamente del proceder de mi compañera y compañeros de estrado.

Maite D. Oronoz Rodríguez<br>
Jueza Presidenta

---

camino hacia la igualdad en vez de mirar hacia el futuro y proponer una solución que nos mueva a progresar como una sociedad que valora la justicia y la equidad entre el hombre y la mujer". <u>Cintrón Román v. Jiménez Echevarría</u>, 2023 TSPR 59, 211 DPR ___ (2023) (*Voto particular disidente*, pág. 22, J. Oronoz Rodríguez).

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

|  |  |  |
|---|---|---|
| Gilda Marie Santos Iglesias | | |
| Peticionaria | | |
| v. | AC-2023-0013 | |
| Lester Lugo Oliveras | | |
| Recurrido | | |

Voto particular disidente emitido por el Juez Asociado Señor ESTRELLA MARTÍNEZ.

En San Juan, Puerto Rico, a 28 de junio de 2023.

Una vez más, este Tribunal pierde la oportunidad de desterrar de una vez y por todas una costumbre machista que atenta contra la igualdad de la mujer puertorriqueña.

Al rehusarse a adentrarse en esta controversia, un sector de este Tribunal nuevamente convalida la alteración en el orden de los apellidos de un menor con casi tres (3) años de edad que fue inscrito únicamente con el apellido materno. Ello, en gran parte debido a que su padre biológico rehuyó a sus responsabilidades, se mudó de Puerto Rico y, en un inicio, no mostró interés en reconocerlo.

Ahora, luego de que la madre en cuestión se viera en la obligación de acudir a la esfera judicial para que el

padre se hiciera cargo de las responsabilidades que le corresponden por ley, nuevamente los tribunales recurren al costumbrismo y, al ordenar sin más una enmienda al certificado de nacimiento del menor para que el apellido paterno tenga precedencia sobre el de la madre, premian su conducta.

La repetición de esta controversia, a poco más de un (1) mes de que un caso esencialmente idéntico tocara sin éxito las puertas de esta última instancia judicial, demuestra la necesidad de que este Tribunal paute normas claras para que tanto el Tribunal de Primera Instancia como el Tribunal de Apelaciones cuenten con unas guías, que propendan al mejor bienestar del menor, al decidir el orden de los apellidos de un menor cuando no hay consenso entre los progenitores. Resulta lamentable que no se ejerza esa facultad de pautar el Derecho aplicable para, como mínimo, erradicar la costumbre patriarcal como fundamento jurídico en este tipo de controversia.

A pesar de que existen seis (6) votos en contra del uso de esta costumbre por razón de los vestigios discriminatorios atados a su origen, nuevamente no se descarga la función de así pautarlo bajo el pretexto y la casualidad de que la primera letra del apellido paterno antecede a la primera del apellido materno. En consecuencia, dejamos al azar el criterio que ejercerán los foros recurridos en lugar de pautar criterios claros que

propendan al mejor bienestar de los menores que son los que cargarán con el dictamen judicial motivado por una pugna entre sus progenitores.

Por tanto, desde la disidencia, hoy reitero que la invocación de una costumbre con orígenes patriarcales para resolver controversias relacionadas con el orden de los apellidos está reñida con la ley y transgrede nuestro ordenamiento jurídico constitucional. Asimismo, tal costumbre es contraria a la moral y al orden público, pues su razón de ser vulnera la igualdad de los valores humanos.

Por tanto, procedía que hoy se pautara sin ambages que cuando los progenitores estén en desacuerdo en controversias de esta índole, el tribunal tiene que aplicar los criterios que reafirmo en este Voto particular disidente y celebrar una vista, según fue oportunamente solicitada en este caso, a fin de resolver qué orden en particular propende al interés óptimo del menor.

Toda vez que así no se hizo, y por estar en desacuerdo con que la modificación de los apellidos esté sujeta a métodos aleatorios ajenos al mejor bienestar del menor, **nuevamente disiento.**

**I**

El 17 de marzo de 2021, la Sra. Gilda Marie Santos Iglesias (señora Santos Iglesias) presentó una demanda sobre filiación en contra del Sr. Lester Lugo Oliveras

(señor Lugo Oliveras). En esencia, adujo que a mediados de 2020 nació un menor producto de una relación que sostuvo con el señor Lugo Oliveras. La señora Santos Iglesias planteó que, a pesar de que acordaron que inscribirían juntos al menor, el señor Lugo Oliveras se mudó al estado de Florida y se negó a reconocerlo en el Registro Demográfico. Alegó que, como consecuencia de lo anterior, inscribió al menor como AM **Santos.**[1]

Ante ello, la señora Santos Iglesias solicitó al tribunal que, luego de obtener los resultados de las pruebas de ADN, el menor fuese filiado con su padre, el señor Lugo Oliveras, y que se estableciera una pensión alimentaria. Por último, peticionó que el apellido materno con el que fue inscrito —**este es, Santos**— continuara en primer lugar en el certificado de nacimiento del menor y, de esta forma, no afectar todos los documentos existentes.

Cuatro meses más tarde, el 8 de julio de 2021, el señor Lugo Oliveras negó las alegaciones en su contra, aceptó ser el padre del menor y se opuso a que el primer apellido del menor fuese el materno. A su entender, la petición de la señora Santos Iglesias de que se mantuviera el apellido materno en primer orden restringe su derecho como padre a tomar decisiones sobre el menor.

---

[1]Resáltese que el uso de "AM" para hacer referencia al menor se realiza con el propósito exclusivo de proteger su identidad.

El 28 de julio de 2021, el foro primario emitió una Sentencia que se ciñó específicamente a ordenar al Registro Demográfico que modificara el certificado de nacimiento del menor a los efectos de que constara que el señor Lugo Oliveras es su padre legal.

Ahora bien, toda vez que la Sentencia nada dispuso sobre el orden de los apellidos, la señora Santos Iglesias presentó una Moción urgente en torno a apellidos del menor conforme a solicitud en la demanda de filiación y una Moción en cumplimiento de orden expresando posición en torno a los apellidos del menor. En ellas, expuso que realizó múltiples gestiones para lograr el reconocimiento voluntario del menor sin tener que solicitar la intervención de los tribunales, pero que desafortunadamente no las pudo completar debido a la falta de interés del señor Lugo Oliveras. Asimismo, la señora Santos Iglesias abundó en que **ha ejercido el rol de crianza del menor sin la ayuda del padre**, **que este no ha mostrado atisbo alguno de buscarlo**, **comunicarse** **o** **suplir** **sus necesidades**, por lo cual reiteró su solicitud de que se mantuviese el apellido materno en primer orden. **A su** **vez, solicitó una vista argumentativa para evidenciar lo** **planteado.**

Por su parte, el señor Lugo Oliveras se opuso a que el menor mantuviera el apellido Santos en primer orden puesto que, dado a que aceptó ser su padre, la ley dispone

que el apellido paterno debe ubicarse en primer orden en el nombre de su hijo ya que ello propende al bienestar óptimo del menor. Asimismo, arguyó que por razones de trabajo y la pandemia del COVID-19 no había podido relacionarse con el menor, pero que, aun si los hechos expuestos por la señora Santos Iglesias fuesen ciertos, no se justificaba la solicitud de la madre.

Así las cosas, el 2 de septiembre de 2021, el Tribunal de Primera Instancia emitió una Resolución mediante la cual consignó las determinaciones de hechos siguientes:

1. El menor [AM Santos] nació el 11 de julio de 2020. Al momento de registrarse el acto de su nacimiento en el Registro de Puerto Rico, se inscribió al menor solo con [el primer apellido] de su madre, la Sr[a]. Gilda M. Santos Iglesias.
2. El menor tiene actualmente 1 año de nacido.
3. El [señor Lugo Oliveras] reconoció al menor al radicar la Contestación a Demanda en el presente caso.
4. […]
5. […]
6. La [señora Santos Iglesias] solicita [que] el menor sea inscrito con el apellido materno en primer lugar para que su nombre sea: [AM] Santos Lugo.
7. El [señor Lugo Oliveras] se opone.

Tras lo anterior, el foro primario expuso que las partes no se habían puesto de acuerdo con respecto al orden de los apellidos y que la solicitud de que el menor mantuviera el apellido materno en primer lugar era una decisión unilateral de la señora Santos Iglesias. Acto seguido, determinó que los argumentos expuestos por la señora Santos Iglesias no eran suficientes para que se

mantuviera su apellido en primer orden. En consecuencia, ordenó al Registro Demográfico que modificara el certificado de nacimiento del menor para que su nombre conste inscrito con el apellido paterno en primer lugar, esto es: AM **Lugo** Santos.

Oportunamente, la señora Santos Iglesias radicó una Moción de reconsideración y solicitud de determinaciones de hechos adicionales. **En esencia, reafirmó la indispensabilidad de la celebración de una vista para poder sustentar y evidenciar las alegaciones sobre el orden de los apellidos y la pobre relación del menor con su padre.** También, expuso que mantener el apellido paterno en primer orden fundamentado en una costumbre es un acto patriarcal, discriminatorio y machista. Sin embargo, el foro primario le proveyó no ha lugar.

En desacuerdo, la señora Santos Iglesias acudió al Tribunal de Apelaciones. En lo pertinente, cuestionó la determinación del foro de primera instancia de ordenar el cambio en el orden de los apellidos del menor basado en que la costumbre así lo mandataba. **En ese sentido, sostuvo que, en lugar de ello, el tribunal debió celebrar una vista para evaluar cabalmente los fundamentos que justificaban mantener el apellido materno en primer orden.**

Tras exponer el Derecho sobre filiación y resaltar el marco jurídico contenido en la Ley del Registro Demográfico de Puerto Rico, el Tribunal de Apelaciones concluyó que el

foro primario actuó correctamente al ordenar que el apellido paterno primara sobre el materno sin la celebración de una vista.

Según adelantamos, el foro apelativo intermedio reiteró lo resuelto por una mayoría de otro panel en Anthony Cintrón Román v. Charline Michelle Jiménez Echevarría y otros.[2] Ello, particularmente, tras razonar que la costumbre de que el apellido paterno reinara en orden de prelación no es contraria a la moral o al orden público y que, a pesar de que lo resuelto podría ser catalogado como la prolongación de una práctica discriminatoria en contra de la mujer, esta tampoco infringe ningún principio o norma constitucional.

Inconforme, la señora Santos Iglesias acudió ante este Tribunal y señaló que el Tribunal de Apelaciones erró al utilizar lo resuelto en Anthony Cintrón Román v. Charline Michelle Jiménez Echevarría y otros, perpetuándose así una práctica discriminatoria e inconstitucional.

**No empece a que existe una mayoría en contra de la costumbre patriarcal en la que se fundamentaron los foros recurridos, este Tribunal nuevamente le cierra las puertas**

---

[2] Anticipo que esta determinación fue analizada por este Tribunal y, a pesar de la falta de una determinación vinculante, seis (6) de mis compañeras y compañeros de estrado están de acuerdo con desterrar la costumbre utilizada por los foros recurridos para validar la imposición del apellido paterno sobre el materno. Véase, Anthony Cintrón Román v. Charline Michelle Jiménez Echevarría y otros, 2023 TSPR 59, 211 DPR __ (2023).

**a una controversia novel y de alto interés público relacionada con el orden en que deben colocarse los apellidos en el nombre de un menor cuando sus progenitores no logran un acuerdo. No puedo avalar tal inacción. Al contrario, reitero que, en cumplimiento con nuestra facultad de pautar el Derecho, este Tribunal debió establecer los contornos normativos que deben regir al momento de decidir qué orden de apellidos garantiza el mejor interés óptimo del menor.**

Veamos, entonces, el Derecho aplicable en el que se fundamenta mi postura.

**II**[3]

**A.**

Como es sabido, "las fuentes del ordenamiento jurídico puertorriqueño son la Constitución, la ley, la costumbre y los principios generales del Derecho. <u>Código Civil de Puerto Rico de 2020</u>, Ley Núm. 55-2020, 31 LPRA sec. 5312 (Código Civil de 2020). Por ello, al resolver

---

[3]De entrada, resalto que la siguiente exposición del Derecho está cimentada en los mismos pilares que orientaron mi disenso en <u>Anthony Cintrón Román v. Charline Michelle Jiménez Echevarría y otros</u>, supra, (Voto particular disidente emitido por el Juez Asociado Señor Estrella Martínez). Ello, debido a la similitud entre ambas controversias.

controversias, los tribunales deben atenerse a tales fuentes, según el orden de prelación antes aludido.[4]

En lo que nos concierne, el Art. 4 del Código Civil de 2020, 31 LPRA sec. 5314, dispone que la costumbre "solo rige en ausencia de ley aplicable, si no es contraria a **la moral o** al **orden público** y si se prueba su espontaneidad, generalidad y constancia".[5] En ese sentido, y con el propósito de identificar la validez de una costumbre, los tratadistas las han clasificado como sigue:

> [1] **costumbre secundum legem**, cuando la costumbre no se aparta de lo dispuesto en la ley, lo reitera o lo concreta; [2] **costumbre contra legem**, si la costumbre contradice la ley, y [3 **costumbre] praeter legem**, cuando faltando ley sobre la misma materia regulada consuetudinariamente falta, por ende, la referencia necesaria para determinar si la costumbre es o no acorde con [a]quella.[6]

De lo anterior, se desprende que una costumbre contra legem —es decir, contra la ley— es una que guía cierta

---

[4]Lo expuesto, claro está, en observancia de la prelación de las fuentes de Derecho federales en los casos y controversias aplicables.

[5](Negrilla y subrayado suplidos).

[6](Negrilla y subrayado suplidos). A. Hernández-Gil Álvarez-Cienfuegos y E. Zuleta Puceiro, El tratamiento de la costumbre en la codificación civil hispanoamericana, Madrid, 1976, pág. 76. Véase, además, G. Savastano, La costumbre como fuente del derecho: sistema jurídico argentino y comparado, págs. 725-727, https://nsuworks.nova.edu/cgi/viewcontent.cgi?referer=&httpsredir=1&article=1669&context=ilsajournal (última visita, 27 de junio de 2023); L. Diez-Picazo, La doctrina de las fuentes del Derecho, https://dialnet.unirioja.es/descarga/articulo/46628.pdf (última visita, 27 de junio de 2023).

materia en oposición a alguna disposición legal. **Sobre el particular, destaco que, por su propia naturaleza, una costumbre se considerará válida como fuente de Derecho solo si no vulnera una fuente de mayor jerarquía —como lo es la Constitución o alguna ley— y no es contraria a la moral o al orden público.**

### B.

Acerca del <u>orden público</u>, este es un "acopio de normas de moral y de ética pública que en ocasiones alcanzan su exposición en ley, pero que aun sin esa expresa declaración legislativa, **constituyen principios rectores de sabio gobierno nacidos de la civilización y fortalecidos por la cultura, la costumbre, por la manera de ser, en fin[,] por el estilo de una sociedad**". (Negrilla suplida). <u>De Jesús González v. A.C.</u>, 148 DPR 255, 264 (1999) (citando a <u>Hernández v. Méndez & Assoc. Dev. Corp.</u>, 105 DPR 149, 153-154 (1976)).

Por su parte, el concepto de <u>la moral</u> se refiere a "aquellos **principios o preceptos morales no discutibles y sí generalmente admitidos.** Estos, por lo común, no conciernen al orden jurídico **sino al fuero público o al respeto humano**". (Negrilla suplida). <u>Negrón v. Sucn. Izquierdo</u>, 46 DPR 660, 668 (1934). Un acto en específico es contrario a la moral si su concreción "trata de inmovilizar la voluntad jurídica del [individuo] dentro de una concepción pragmática de un estado ideal, **concebido en**

**abstracto, con la correspondiente merma en los valores humanos".** (Negrilla suplida). Flores v. Municipio de Caguas, 114 DPR 521, 527 (1983) (citando a C.R.U.V. v. Peña Ubiles, 95 DPR 311, 317 (1967)).

Tras ilustrar la normativa de ambos conceptos, procedo a explicar su relación con el Derecho referente al nombre y los apellidos en Puerto Rico.

**III**

**A.**

El nombre de una persona encuentra su razón de ser en la necesidad apremiante de identificar y distinguir a cada individuo del resto de los miembros de la sociedad.[7] Es por ello que el nombramiento de una persona de una forma en particular goza de una importancia trascendental debido a las consideraciones constitucionales y por las implicaciones que ello acarrea en su vida social y jurídica.[8]

Así, pues, mediante la Ley del Registro Demográfico de Puerto Rico, 24 LPRA sec. 1041 et seq., se creó un Registro General Demográfico (Registro Demográfico), el cual tiene a su cargo, entre otros asuntos, la inscripción de los nacimientos que ocurran en Puerto Rico. Íd., sec. 1071. Al respecto, se requiere que se haga una declaración de este

---

[7]M. Linacero de la Fuente, El nombre y los apellidos, Madrid, Ed. Tecnos, pág. 19.

[8]Íd.

hecho mediante un certificado de nacimiento que deberá ser entregado en el Registro Demográfico. Íd., sec. 1131. Tal certificado requiere, además, que se suministre cierta información, entre esta, el "[n]ombre y los apellidos del niño". Véase, Íd., sec. 1133(3).

De particular importancia a la controversia ante nos, el Art. 19-A de la Ley del Registro Demográfico, 31 LPRA sec. 1133a, dispone que:

> **Si el nacimiento es reconocido por uno solo de los padres** será obligación del Registro Demográfico, cuando así lo requiera dicho padre o madre al momento de la inscripción, **realizar la inscripción haciendo constar los** dos **apellidos del único que lo reconoce.**
>
> **Si con posterioridad a la inscripción surgiera la intención de un reconocimiento** voluntario, **el Registro Demográfico viene en la obligación de sustituir el apellido del padre** o la madre de acuerdo a la documentación evidenciada.[9]

Por otro lado, con la aprobación de la reforma del Código Civil de 2020, se incorporaron varias disposiciones atinentes al nombre, las cuales deben examinarse en conjunto con lo dispuesto en la Ley del Registro Demográfico.[10] Sobre el particular, el Art. 82 del Código

---

[9](Negrilla suplida).

[10]"La inscripción, alteración o modificación del nombre siempre se regularon por la Ley del Registro Demográfico, Ley Núm. 24 de 22 de abril de 1931, según enmendada. **Ahora, en el título XI del Libro Segundo sobre las Instituciones Familiares, se regulan estos procesos con cierta especificidad, lo que también es un logro muy positivo y puntual de la reforma**". (Negrilla suplida). M. Fraticelli

Civil de 2020, 31 LPRA sec. 5541, dispone que **"[t]oda persona natural tiene el derecho a tener y a proteger su nombre, que debe inscribirse en el Registro Demográfico de conformidad con la ley**[…]".[11] Acto seguido, el Art. 83 del Código Civil de 2020, 31 LPRA sec. 5542, detalla que "[e]l nombre de una persona comprende el nombre propio o individual unido al primer apellido de sus progenitores". Asimismo, el Art. 84 establece, de manera esencialmente idéntica al Art. 19-A de la Ley del Registro Demográfico, <u>supra</u>, el procedimiento para cuando reconocimiento e inscripción lo realiza un solo progenitor.[12]

   **Nótese que los cuerpos normativos antes aludidos disponen que en caso de que solo uno de los progenitores realice el reconocimiento, nuestro ordenamiento viabiliza**

---

Torres, <u>La persona natural y las instituciones familiares en el derecho puertorriqueño: una mirada axiológica a los libros primero y segundo del nuevo Código Civil de Puerto Rico</u>, en L. Muñíz Argüelles, <u>El Código Civil de Puerto Rico de 2020: primeras impresiones</u>, San Juan, Fideicomiso Esc. Derecho UPR, 2021, pág. 62.

   [11] (Negrilla suplida).

   [12] El artículo precitado lee como sigue:

> Si uno solo de los progenitores reconoce e inscribe a la persona nacida, lo hace con sus dos apellidos en el mismo orden del progenitor que lo reconoce. El reconocimiento posterior del otro progenitor justifica la sustitución de uno de los apellidos en el nombre de la persona por el del progenitor que le reconoce con posterioridad.

   Íd., sec. 5543.

**que el menor lleve uno (1) o, en caso de que así sea solicitado, hasta los (2) apellidos del progenitor reconocedor.**

Así pues, si el menor es inscrito con los dos (2) apellidos del progenitor que lo reconoce y luego el otro progenitor desea reconocerlo, lo que procede es la sustitución de uno de los apellidos en el nombre del menor por el del progenitor que último realiza el reconocimiento.

Establecido lo anterior, procedemos a exponer las garantías constitucionales reconocidas en las Constituciones de Puerto Rico y de Estados Unidos que cobran eficacia al evaluar la controversia planteada en este recurso.

**B.**

La Constitución de Puerto Rico consagra el principio cardinal de la inviolabilidad de la dignidad de las personas. Art. II, Sec. 1, Const. PR, LPRA, Tomo 1. Con el motivo de propiciar la igualdad humana, se establece que todos los hombres y las mujeres son iguales ante la ley y, a su vez, se prohíbe el establecimiento de discrimen alguno por, entre otros motivos, el sexo. Íd. Por ello, nuestra Constitución reconoce que las personas tienen un derecho fundamental a la intimidad y la protección contra ataques abusivos a su honra, a su reputación y a su vida privada o familiar. Íd., Art. II, Secs. 1 y 8.

En reiteradas ocasiones, este Tribunal ha señalado que el Derecho a la intimidad se lesiona "entre otras instancias, cuando se limita la facultad de un individuo de tomar decisiones personales, familiares o íntimas […]". Siaca v. Bahía Beach Resort, 194 DPR 559, 585 (2016); Lozada Tirado et al. v. Testigos Jehová, 177 DPR 893, 910 (2010); Soc. de Gananciales v. Royal Bank de P.R., 145 DPR 178, 201 (1998); Pueblo v. Duarte Mendoza, 109 DPR 596 (1980); Figueroa Ferrer v. E.L.A., 107 DPR 250 (1978).

Por su parte, el derecho fundamental de los progenitores a tomar decisiones libremente con respecto a la crianza de sus hijos también está firmemente reconocido en la esfera federal. Véase, Troxel v. Granville, 530 US 57, 77 (2004); Washington v. Glucksberg, 521 US 702, 720 (1997); Santosky v. Kramer, 455 US 745, 753 (1982); Quilloin v. Walcott, 434 US 246, 255 (1978); Cleveland Bd. of Educ. v. LaFleur, 414 US 632, 639-640 (1974).[13]

---

[13]Refiérase, además, a Henne v. Wright, 904 F.2d 1208, 1217 (8vo Cir. 1990) (Opinión concurrente en parte y disidente en parte del Circuit Judge, Arnold); Sydney v. Pingree, 564 F. Supp. 412 (S.D. Fla. 1983); Jech v. Burch, 466 F. Supp. 714 (D. Haw. 1979).

Para una exposición de los casos antes citados, véase, Anthony Cintrón Román v. Charline Michelle Jiménez Echevarría y otros, supra, (Voto particular disidente emitido por el Juez Asociado Señor Estrella Martínez) y Roig Pou y otros v. Reg. Demográfico, 201 DPR 403, 408-409 (2018) (Voto particular disidente emitido por el Juez Asociado Señor Estrella Martínez).

Al respecto, en Roig Pou y otros v. Reg. Demográfico, 203 DPR 346 (2019) (Sentencia), controversia en la cual este Tribunal, en etapa de reconsideración,[14] concedió la petición de unos padres que pretendían unir mediante un guion el apellido paterno y materno en el nombre de sus hijos, destaqué que una solución judicial de esta naturaleza hacía indispensable tomar en consideración las garantías constitucionales antes aludidas. Íd., págs. 366-377 (Opinión de conformidad del Juez Asociado Señor Estrella Martínez).

**IV**

Ciertamente, en Puerto Rico no existe una ley que exija que los apellidos deben posicionarse de alguna manera específica. Ahora bien, en aquellos casos en los que el otro progenitor, por ejemplo, abandona la jurisdicción y se niega a inscribirlo, nuestro ordenamiento viabiliza que el menor lleve únicamente el apellido del progenitor que lo reconoce. Si posteriormente el otro progenitor desea formalizar el reconocimiento, lo que procede es la añadidura del apellido de este último progenitor en el nombre del menor. Véase, Art. 19-A de la Ley del Registro Demográfico, supra, sec. 1133a; Art. 84 del Código Civil de 2020, supra, sec. 5543.

---

[14]Refiérase a, Roig Pou y otros v. Reg. Demográfico, 201 DPR 403 (2018) (Voto particular disidente emitido por el Juez Asociado Señor Estrella Martínez).

A pesar de que el menor AM Santos fue inscrito únicamente con el apellido de su madre, un sector de este Tribunal convalida que, en virtud de una costumbre, los apellidos deben invertirse para que sea el del padre el que tenga primacía sobre el de la madre. Lo anterior, aun cuando, tal y como lo reconoce el foro apelativo intermedio y seis (6) integrantes de este Tribunal, **ese orden siempre ha obedecido a una costumbre que se identifica claramente por una línea férrea a través del tiempo: <u>la visibilización del hombre como la figura de poder en relación con la mujer progenitora</u>.**[15]

Siendo ello así, abundaremos en los orígenes de tan insostenible costumbre.

**A.**

Según la Comisión Judicial Especial para estudiar el Discrimen por Género en los Tribunales de Puerto Rico (Comisión), entidad que realizó un <u>Informe sobre el discrimen por razón de género en los tribunales de Puerto Rico</u> (Informe), el Derecho de Familia que heredamos de España se distinguió por establecer:

> [U]n matrimonio indisoluble, celebrado con
> la mayor solemnidad entre un hombre y una
> mujer, que aportaban, por imperativo legal,

---

[15]B. D. Rivera Burgos, <u>El orden de los apellidos en Puerto Rico</u>, 67 Rev. Jur. C. Abo. PR 29 (2006); Linacero de la Fuente, <u>op. cit.</u>, págs. 23, 113; A. Y. Saavedra Navarro, <u>El orden de los apellidos: ¿imposición o elección?</u>, págs. 15-17, https://pirhua.udep.edu.pe/bitstream/handle/11042/4923/DER_2102.pdf?sequence=1&isAllowed=y (última visita, 27 de junio de 2023).

sus talentos, capacidad productora y resultados de sus esfuerzos a una empresa comunitaria, donde el marido actuaba, protegido por el manto de la ley, como único socio gestor de toda actividad económica y jurídica generada durante su vigencia. **Este reconocimiento exaltaba el papel protagónico del hombre, siempre dominante,** en el campo doméstico, social, político y religioso. **La mujer debía total obediencia al marido, tenía que llevar su apellido y seguirle donde quiera que fijan su residencia,** someterse a la relación sexual, aunque fuese forzada, y cederle potestad exclusiva sobre sus hijos e hijas.[16]

En ese entonces, era el Art. 94 del Código Civil de 1930, 31 LPRA ant sec. 287, la fuente de Derecho que le imponía a la mujer casada la obligación de usar el apellido de su marido. Empero, en virtud de la Ley Núm. 93 de 9 de julio de 1985, este articulado se derogó,

> [Y]a que es a todas luces <u>contrario a nuestro ordenamiento constitucional el imponer a la mujer la obligación de usar el apellido de su marido, cuando a [e]ste no se le impone una obligación igual.</u>
>
> <u>Esta Asamblea Legislativa entiende como política pública que todo discrimen por razón de sexo que contenga nuestro ordenamiento jurídico, debe eliminarse.</u>
>
> Para cumplir con esta política pública y evitar que se considere a la mujer un ser inferior o independiente, debe derogarse este artículo.[17]

---

[16] (Negrilla suplida). Comisión Judicial Especial para estudiar el Discrimen por Género en los Tribunales de Puerto Rico (Comisión), <u>Informe sobre el discrimen por razón de género en los tribunales de Puerto Rico,</u> 1995, pág. 164 (citas internas omitidas).

[17] (Negrilla y subrayado suplidos). Exposición de Motivos de la Ley Núm. 93 de 9 de julio de 1985 (1985 Leyes de Puerto Rico 321).

A pesar de lo anterior, la tradición de subordinar el apellido de la mujer no cesó. Tal costumbre continuó en el contexto de los progenitores al inscribir a sus hijos en el Registro Demográfico. Al contextualizar esta práctica, el Informe de la Comisión denunció que:

> [E]l uso de los apellidos paternos como el patronímico que identifica a la familia, siendo esta costumbre, elevada a rango jurídico, [es] **la manifestación más obvia del dominio masculino en el seno familiar**. La ley no requiere que se coloque el apellido del padre antes del de la madre, pero nadie ha cuestionado esa ubicación, porque social y culturalmente siempre se ha aceptado que así se haga.[18]

Ahora bien, con la aprobación del Código Civil de 2020, finalmente se desaprobó la utilización de esta costumbre.

Según surge del Código Civil de 2020 Comentado, supra,[19] al promulgarse el Art. 83, supra,[20] la Asamblea Legislativa estuvo consciente de "la inclusión del apellido paterno y el materno, en ese orden, por práctica

---

[18]Informe de la Comisión, supra, pág. 205.

[19]La compilación de los comentarios por parte de la Asamblea Legislativa se realizó "con el fin de comparar y servir de guía en el proceso de análisis e investigación que generará esta nueva ley" y, a su vez, para hacer "más conveniente a las y los investigadores obtener una noción del racionamiento sobre el artículo que le interesa conocer". **De ahí nace la importancia de tales comentarios al analizar esta controversia**. Véase, https://www.oslpr.org/ files/ugd/5be21a_15cd7772b7ca4ecd84 035ed394e1e517.pdf, pág. 1 escolio 1 (última visita, 27 de junio de 2023).

[20]"El nombre de una persona comprende el nombre propio o individual unido al primer apellido de sus progenitores". 31 LPRA sec. 5542.

administrativa, aunque no hay una norma escrita que así lo exija".[21] En consecuencia, tras reconocer esta costumbre, el Poder Legislativo realizó un recorrido normativo que, por su extrema pertinencia, expongo a continuación:

> Como se afirma en el Estudio Preparatorio del Código Civil de Puerto Rico, pág. 243, "el concepto de apellido paterno como apellido familiar se acentuaba más cuando la mujer casada llevaba el apellido de su marido. Al derogarse el Artículo 94 del Código Civil de 1930, que disponía que la mujer usara el apellido del marido, la costumbre adoptada por muchas mujeres de llevar el apellido del marido con la preposición "de" o a través de la total sustitución del apellido propio como ocurre en la sociedad estadounidense y en muchas latinoamericanas, comenzó a desaparecer. Cada día más mujeres casadas conservan sus dos apellidos de soltera." **Ante el cambio social y jurídico, es propio cuestionarse si debe imponerse el orden tradicional en la inscripción de los apellidos, primero paterno y luego materno, o si ello refleja y perpetúa la dominación masculina sobre la mujer y la familia.**
>
> **Varias convenciones internacionales favorecen el que se elimine toda connotación sexista en la asignación de nombres y apellidos a las personas.** Por ejemplo, el Artículo 16 de la Convención de Naciones Unidas de 18 de diciembre de 1979, recomienda que los Estados signatarios tomen las medidas necesarias para hacer desaparecer toda disposición sexista en el derecho del nombre; el Comité de Ministros del Consejo de Europa, desde 1978, en la Resolución 78/37 recomienda a los Estados miembros que hagan desaparecer toda discriminación entre el hombre y la mujer en el régimen jurídico del nombre.
>
> **Incluso, el Tribunal Europeo de Derechos Humanos ha sancionado**, en la sentencia de 22 de febrero de 1994, en el

---

[21]Código Civil de 2020 Comentado, <u>supra</u>, pág. 75.

caso Burghartz C. Suisse, **las discriminaciones sexistas en la elección de los apellidos.** A partir de estas apreciaciones, las que se incluyen en la exposición de motivos de la Ley Núm. 40-1999, sobre inscripción del nombre y orden de los apellidos, **España permite que los progenitores escojan el orden en que quieren que los hijos e hijas lleven sus apellidos.** Dicha exposición de motivos aclara que la regulación existente en el Código Civil y en la Ley del Registro Civil en materia del orden de inscripción de los apellidos establecía, hasta el momento de su aprobación, la regla general de que, determinándose la filiación por los apellidos, el orden de éstos sería el paterno y materno, aunque se reconocía la posibilidad de modificar esta situación por el hijo, una vez alcanzara la mayoría de edad. **Sin embargo, siguiendo las recomendaciones de los acuerdos internacionales citados, considera más justo y menos discriminatorio para la mujer permitir que inicialmente puedan los padres de común acuerdo decidir el orden de los apellidos de sus hijos, cuya decisión para el primer hijo habrá de valer también para los hijos futuros de igual vínculo**. Ante el no ejercicio de esta opción, deberá regir lo dispuesto en la Ley, que es la preferencia por el apellido paterno. La Ley Núm. 40 enmienda el Artículo 109 del Código Civil Español para que recoja en su texto esta nueva normativa.

El Artículo 51 del Código de Québec, permite que el menor recién nacido reciba uno (1) o más nombres de pila y el apellido de familia de uno (1) u otro de los progenitores, en el orden que los progenitores quieran, aunque se impone el límite de dos (2) apellidos. Estos apellidos pueden formarse por combinaciones de los apellidos de los padres, en el orden que ellos dispongan. Artículo 52 del Código Civil de Québec. Incluso los hijos de un mismo matrimonio pueden llevar apellidos distintos, paterno unos, materno otros, o los dos (2) apellidos en diverso orden, según lo dispongan los padres. Se evita así la alegación de discrimen por razón del

género de los padres. Los Artículos 50 a 70 del Código de Québec, regulan extensamente el asunto del nombre.[22]

**De los comentarios legislativos antes citados se desprende el repudio institucional al costumbrismo de que sea el apellido del hombre el que tenga primacía sobre el de la mujer.**

Puesto que el Tribunal de Apelaciones acudió a esta costumbre para resolver el caso de epígrafe, procedemos a exponer —de conformidad con la prelación de las fuentes de Derecho que rigen en nuestro ordenamiento jurídico— los fundamentos constitucionales y estatutarios que demuestran la incorrección de esta determinación.

**B.**

En la controversia aquí planteada el menor AM Santos fue inscrito en el Registro Demográfico únicamente con el apellido materno, ya que su padre inicialmente se negó a reconocerlo.

Ante la inconformidad del señor Lugo Oliveras, cabe preguntarse lo siguiente: **¿una vez se realizó la inscripción del menor, nuestro ordenamiento jurídico exige que se modifique automáticamente el certificado de nacimiento con el propósito exclusivo de conformarlo a la costumbre de que el apellido paterno tenga prelación sobre el de la madre? La respuesta es que no**.

---

[22](Negrilla y subrayado suplidos). Íd., págs. 75-76.

En primer lugar, reafirmamos que la costumbre en controversia representa una afrenta a los derechos fundamentales que garantizan la dignidad humana, la igualdad de las personas y la prohibición de discrimen por razón de sexo, así como las protecciones a la intimidad y contra ataques abusivos a la honra, a la reputación y a la vida privada o familiar. Art. II, Sec. 1 y 8, Const. PR, supra.

Debido a los orígenes en que tradicionalmente se ha fundamentado el relegar a un segundo plano el apellido materno, resulta incuestionable que esa costumbre no sobrepasa el crisol constitucional estricto. Principalmente porque la tradición impugnada perpetúa un propósito que es inconstitucional, "pues busca reiterar un prejuicio que discrimina y disminuye el rol de la mujer en el ámbito familiar"[23] por razón de su sexo. Véase, Garib Bazaín v. Hosp. Aux. Mutuo et al., 204 DPR 601, 690, (2020) (citando a López v. E.L.A., 165 DPR 280 (2005)). **En consecuencia, insisto en que la invocación de la costumbre consagrada en el Art. 4 del Código Civil de 2020 es, a todas luces, un desatino considerable, más que todo, porque tal tradición**

---

[23]Suprema Corte de Justicia de la Nación, Cuadernos de jurisprudencia núm. 7: Igualdad y no discriminación de género, México, pág. 61, https://www.sitios.scjn.gob.mx/cec/sites/default/files/publication/documents/2021-02/IGUALDAD%20Y%20NO%20DISCRIMINACION_febrero%202021.pdf (última visita, 27 de junio de 2023).

**transgrede varias disposiciones de nuestro Derecho Constitucional.**

En segundo lugar, no cabe duda de que la Ley del Registro Demográfico y el Código Civil de 2020 permiten la colocación del apellido materno en primer orden. Esta afirmación encuentra apoyo en la publicación realizada por la Asamblea Legislativa intitulada <u>Código Civil Año 2020 Comentado</u>, <u>supra</u>. Allí, como parte de una exposición sobre la intención legislativa y el alcance del Art. 82 del Código Civil de 2020, <u>supra</u>, se expuso lo siguiente:

> Por otro lado, **el precepto propuesto mantiene la norma que exige la inscripción de los apellidos** paterno y materno, **<u>independientemente de su orden</u>**, por dos (2) razones: **<u>garantiza una más efectiva individualización de la persona en una sociedad muy poblada</u>**, **<u>y reconoce a la mujer y al hombre paridad de derechos respecto a los hijos e hijas que procrean juntos</u>**.[24]

De hecho, a igual conclusión arribó la profesora y ex jueza del Tribunal de Apelaciones, Migdalia Fraticelli Torres, quien, en el libro <u>El Código Civil de Puerto Rico de 2020: Primeras Impresiones</u>, concluyó lo siguiente:

> **Es decir, los artículos aludidos no requieren la colocación del apellido paterno antes del apellido materno. Y no pueden requerirlo por varias razones: <u>la primera</u>,** que el artículo 83 solo exige que la inscripción consista "del nombre propio o individual unido al primer apellido de sus progenitores". Sin imponer un orden; **<u>la segunda</u>,** que el artículo 84 permite que se sustituya "uno de los apellidos… por el del progenitor que le reconoce con posteridad", sin indicar cómo o dónde se colocará el

---

[24] (Negrilla y subrayado suplidos). Íd., pág. 76.

apellido añadido en la nueva inscripción, lo que implica que puede sustituirse y colocarse en cualquier orden; **la tercera**, que existe la posibilidad de que los dos progenitores que acudan a inscribir al nacido sean del mismo género. En esta situación, "el apellido paterno" no estará siempre o necesariamente disponible para colocarlo antes que el apellido del "otro progenitor".

La paternidad o la maternidad en los casos de parejas de un mismo género puede darse porque ambos progenitores adoptaron al inscrito, porque uno de ellos adoptó al hijo o la hija del otro, porque el inscrito es fruto de un acuerdo de maternidad subrogada o porque uno de los progenitores es mujer o transgénero que gestó a su propio hijo o hija en esa relación de pareja. No puede admitirse que las parejas del mismo género tengan la libertad de escoger el orden de los apellidos de su prole, pero las parejas heterosexuales no tengan esa opción.

Por lo dicho, **podemos afirmar que la normativa adoptada en el Código Civil de 2020 no impide la selección del orden de los apellidos del inscrito** en el Registro Civil por parte de sus progenitores, **situación que proscribe de nuestro ordenamiento el apellido paterno como patronímico familiar.** Esta novedad reafirma la igualdad de género como valor apremiante de nuestra sociedad, por lo que constituye un gran acierto de la reforma.[25]

Evidentemente, es incuestionable la validez de una inscripción con el apellido materno en primer orden en nuestro ordenamiento jurídico. Máxime cuando, como vimos, el Art. 19-A de la Ley del Registro Demográfico, supra, sec. 1133a y el Art. 84 del Código Civil de 2020, supra, sec. 5543, predisponen que en caso de que uno de los

---

[25]M. Fraticelli Torres, op. cit., pág. 62.

progenitores realice el reconocimiento e inscripción, el menor podrá portar únicamente el apellido del progenitor que lo reconoce. **Por este otro argumento, insistimos en que es errado concluir que procede una enmienda al certificado de nacimiento con el fin de subordinar el apellido materno**.

En tercer lugar, recalcamos que, aún si ignoráramos que la costumbre cobra vigencia en ausencia de disposición legal aplicable, su validez está condicionada a que esta no sea contraria a la moral o el orden público. 31 LPRA sec. 5314. Sobre el particular, recordemos que la tradición de imponer el apellido paterno sobre el materno se clasifica como una costumbre contra legem, ya que, como vimos, es contraria a las diversas garantías constitucionales y estatutarias antes discutidas.

En ese sentido, la subordinación automática del apellido materno transgrede el orden público en la medida en que propicia unos valores patriarcales que no deben guiar la existencia y bienestar de la sociedad puertorriqueña.[26] Pérez Rodríguez v. López Rodríguez, 210 DPR 163 (2022). Asimismo, tal costumbre contraviene los principios morales generalmente admitidos que propenden al respeto y garantizan la igualdad de los valores humanos. Véase, Negrón v. Sucn. Izquierdo, supra; Flores v. Municipio de

---

[26]**Ello, máxime, ya que el orden público debe protegerse con mayor preeminencia cuando se trata de derechos fundamentales que inciden en el bienestar general y son de alta jerarquía en la sociedad**. Martínez Marrero v. González Droz, 180 DPR 579, 589 (2011).

<u>Caguas</u>, supra; <u>C.R.U.V. v. Peña Ubiles</u>, supra. **De ahí, además, que la imposición del apellido paterno como patronímico de la familia, fundamentado en la costumbre administrativa del Registro Demográfico, sea insostenible.**

Por si fuera poco, ni siquiera en la Ley del Registro Demográfico o en el Código Civil de 2020 se establece expresamente que el apellido paterno debe inscribirse primero que el materno. Ante esa realidad, cobran aún mayor vigencia los pronunciamientos recientes de este Tribunal en <u>RPR & BJJ Ex Parte</u>, 207 DPR 389 (2021), a saber:

> No existe duda de que la información que consta en el Registro Demográfico constituye evidencia <u>prima facie</u> del hecho que se pretende constatar. **Tampoco hay duda de que** al Registro Demográfico solo tienen acceso los hechos o las cualidades del estado civil expresamente declarados inscribibles en la legislación registral y que **cualquier enmienda sustancial de sus constancias tiene que estar previamente autorizada por la ley y ordenada judicialmente**.[27]

Es decir, aun cuando se pretendan invisibilizar los importantes aspectos constitucionales que enmarcan esta controversia, tal ejercicio interpretativo también obvia adrede que la enmienda al certificado de nacimiento validada por este Tribunal no está autorizada por la ley.

**El trato dispar en perjuicio de la madre se recrudece ante el hecho de que los foros recurridos le impusieron a esta la carga de justificar la suficiencia del cambio de**

---

[27] (Negrilla y subrayado suplidos). Íd., págs. 434-435.

**apellido, ignorando así que la modificación pretendida obedece al reconocimiento tardío del padre. En todo caso, es al señor Lugo Oliveras a quien le corresponde demostrar las razones de peso que justifican la alteración del orden de los apellidos en el nombre del menor.**

En definitiva, enfatizo que la antinomia entre una costumbre y las disposiciones de las Constituciones local y federal, así como del Código Civil de 2020 y los preceptos que lo inspiraron, tienen el efecto de que tal costumbre carezca de valor vinculatorio.[28]

### D.

Por tanto, ante una **costumbre inválida por su propia razón de ser**, procedía que el Tribunal de Apelaciones descartara su utilización y que este Tribunal atendiera este asunto de conformidad con los principios de Derecho que rigen en nuestro ordenamiento jurídico.[29]

En esa línea, es harto conocido que la falta de acuerdo entre los progenitores con respecto a sus hijos consecuentemente ha sido resuelta por los tribunales de acuerdo con el principio doctrinal del "mejor interés" o

---

[28]Según expuse en <u>Anthony Cintrón Román v. Charline Michelle Jiménez Echevarría y otros</u>, supra, el desarrollo de esta corriente en el Derecho comparado apuntala a la misma dirección. Para una discusión sobre el particular, véase, Íd., págs. 33-35.

[29]Véase, 31 LPRA sec. 5312.

el "mejor bienestar" del menor.[30] Este criterio, así reafirmado en el Código Civil de 2020 bajo el concepto del "interés óptimo", rige en la mayoría de las disposiciones legales que involucran a menores.[31]

Específicamente, el principio del "interés óptimo" es el criterio rector en todos aquellas controversias en las que haya que: (1) determinar el domicilio del menor, ante el desacuerdo de los progenitores separados; (2) escoger y designar un tutor; (3) emitir las medidas provisionales que le afectan en el divorcio de los progenitores; (4) autorizar su adopción; (5) conceder la custodia compartida; permitir el derecho de visita de otros parientes; (6) administrar sus bienes por los progenitores con patria potestad, y (7) decretar judicialmente su emancipación, entre otros actos que le afectan.[32] **Generalmente, previo a realizar tal determinación, la jueza o el juez en cuestión celebra una**

---

[30]"Conforme expresáramos, los tribunales tienen la obligación, bajo el poder de parens patriae del Estado, de velar por los mejores intereses de los menores. Esto implica el tratar de minimizar el efecto adverso que pudieran causar los procedimientos en ellos". Pena v. Pena, 152 DPR 820, 840 (2000) (Sentencia).

[31]A modo de ejemplo, el Art. 603 del Código Civil de 2020, 31 LPRA sec. 7282, requiere que, en casos de custodias provisionales, si las partes no logran ponerse de acuerdo, el tribunal debe celebrar una vista para evaluar la prueba y conceder la custodia sobre quien mejor se ajuste el interés óptimo del menor.

[32]Fraticelli Torres, op. cit., pág. 99 (haciendo referencia a 31 LPRA secs. 5554, 5681-5682, 6793, 7187, 7282, 7332, 7631-7632, 7453, 7455).

**vista para evaluar la totalidad de las circunstancias y**
**decidir cuál opción se ajusta mejor al interés óptimo del**
**menor**.

Sobre esto, en <u>Anthony Cintrón Román v. Charline</u>
<u>Michelle Jiménez Echevarría y otros</u>, supra, una
controversia esencialmente idéntica a la que hoy tiene ante
su consideración este Tribunal, critiqué que varios de mis
compañeros se rehusaran a reconocer las fuentes de Derecho
que invalidan la aplicación de una costumbre patriarcal que
promueve la desigualdad de género. **Además, discrepé de que**
**otros reconocieran que la resolución de este tipo de casos**
**requiere que los tribunales tengan como norte el principio**
**del interés óptimo del menor, pero que se negaran a acoger**
**los criterios cualitativos y cuantitativos adoptados por**
**múltiples jurisdicciones de avanzada dirigidos a proteger**
**efectivamente el interés óptimo del menor.**[33]

Indudablemente, al determinar si el **mejor interés del**
**menor está servido en, por una parte, la retención del**
**apellido con el que fue inscrito** o, por otra, en el cambio
de apellido solicitado, reafirmo que los criterios que
expondré a continuación auxiliarán a los foros judiciales
en esa tarea:

> **(1) <u>el tiempo que el niño ha utilizado el</u>**
> **<u>apellido con el que fue inscrito</u>; (2)** la

---

[33]Véase, <u>Emma v. Evans</u>, 71 A.3d 862 (2013); <u>Gubernat</u>
<u>v. Deremer</u>, 657 A.2d 856 (1995); <u>Ribeiro v. Monahan</u>, 524
A.2d 586 (R. I 1987); <u>In re Marriage of Schiffman</u>, 620 P.2d
579, 583 (1980). Refiérase, además, a <u>Roe v. Conn</u>, 417 F.
Supp. 769 (M.D. Ala. 1976).

identificación del niño como miembro de una familia en particular; **(3)** la potencial ansiedad, vergüenza o incomodidad que el niño pudiese experimentar si lleva un apellido diferente al del progenitor custodio, **(4)** cualquier preferencia que el niño pueda expresar, en caso de que el niño posea madurez suficiente para expresar una preferencia relevante; […] **(5)** <u>**mala conducta o negligencia de los progenitores, como lo sería la falta de apoyo o de contacto con el niño**</u>; **(6)** grado de respeto comunitario, o la falta de él, asociado con el nombre paterno o materno; **(7)** <u>**motivación indebida por el progenitor que solicita el cambio de apellido**</u>; **(8)** si el progenitor ha cambiado o tiene la intención de cambiar su nombre al contraer matrimonio; **(9)** si el niño tiene una relación sólida con hermanos de diferentes apellidos; **(10)** si el apellido tiene vínculos importantes con el patrimonio familiar o la identidad étnica, y **(11)** el efecto de un cambio de nombre en la relación entre el hijo y cada uno de los progenitores.[34]

**Así las cosas, correspondía que este Tribunal pautara sin ambages que, previo a realizar el cambio de apellido solicitado, los tribunales deben realizar una evaluación cabal de la totalidad de las circunstancias atinentes al caso a la luz de los factores antes esbozados. De esta forma, al momento de emitir su determinación, en lugar de recurrir a la costumbre, el tribunal deberá fundamentar su decisión basado únicamente en la consecución del interés óptimo del menor. Como suele ocurrir en multiplicidad de controversias de Derecho de Familia, generalmente los**

---

[34] (Negrilla y subrayado suplidos). <u>Anthony Cintrón Román v. Charline Michelle Jiménez Echevarría y otros</u>, supra, en las págs. 38-41 (citando a <u>Emma v. Evans</u>, supra, <u>Gubernat v. Deremer</u>, supra).

**tribunales celebran una vista para escudriñar el mejor bienestar del menor, la cual fue negada por el Tribunal de Primera Instancia en este caso.**

**Lamentablemente, tanto el Tribunal de Primera Instancia como el Tribunal de Apelaciones ignoraron la petición reiterada de la señora Santos Iglesias de que se le concediera una vista para evidenciar, entre otros asuntos, <u>que el señor Lugo Oliveras abandonó la Isla y rechazó el reconocimiento e inscripción de su hijo hasta que fue demandado</u>, <u>su falta de interés en involucrarse en la crianza del menor</u>, <u>su dejadez en la comunicación y en la suplencia de sus necesidades</u>, <u>así como la pobre relación del menor con su padre</u>.** En cambio, los foros recurridos les dieron más peso a las razones banales brindadas por el señor Lugo Oliveras, las cuales, en nombre de perpetuar la costumbre, oscilaron entre alegar que mantener el apellido materno en primer orden restringiría su derecho a tomar decisiones sobre el menor y especular que este recibiría un trato dispar en comparación con hijos presentes y futuros.

Ante ese cuadro, desafortunadamente se toma una decisión trascendental en la vida del menor aplicando exclusivamente una costumbre patriarcal que, en este caso, premia al progenitor que menos responsabilidad ha exhibido. Ciertamente, este caso expone crudamente las consecuencias nefastas de aplicar costumbres machistas o medidas

aleatorias, cuyo resultado puede desembocar en otorgar una preeminencia injustificada a un apellido por razones totalmente ajenas al mejor bienestar del menor. Tal actuación es contraria a nuestro Derecho, pues no contempla el interés óptimo del menor como el criterio judicial adecuado a ser considerado en aquellas instancias en las que los progenitores están en desacuerdo con respecto al orden en que deben constar los apellidos del menor. Como agravante, perpetúa la desigualdad en nuestra sociedad.

## V

**Hoy, nuevamente, este Tribunal Supremo claudica su función constitucional y, con su inacción, falla en desterrar de nuestro ordenamiento una costumbre discriminatoria que promueve un accionar obsoleto y machista, que es opuesto a nuestras fuentes de Derecho y que incentiva la desigualdad. Por ello, nuevamente disiento.**

Luis F. Estrella Martínez
Juez Asociado

EN EL TRIBUNAL SUPREMO DE PUERTO RICO

Gilda Marie Santos Iglesias

    Peticionaria

       v.

Lester Lugo Oliveras

    Recurrido

AC-2023-0013

Voto Particular Disidente emitido por el Juez Asociado señor COLÓN PÉREZ.

En San Juan, Puerto Rico, a 28 de junio de 2023.

Hace tan solo un mes atrás, en *Cintrón Román v. Jiménez Echevarría et al.*, 2023 TSPR 59, 211 DPR ___ (2023), **seis (6) miembros de este Tribunal**, al abordar una controversia tan novel como la que subyace en el caso de marras, rechazaron acudir a la anquilosada teoría del uso y la costumbre para, en caso de desacuerdo entre los progenitores sobre el orden en que han de transmitir sus respectivos apellidos a sus hijos o hijas una vez establecida la doble filiación, validar que el Registro Demográfico de Puerto Rico se viese en la obligación de inscribir primero el apellido paterno, y luego el materno.

Al así hacerlo, en esa ocasión, al descartar esa visión totalmente patriarcal, -- entiéndase, la aplicación de la teoría del uso y la costumbre en asuntos tan complejos y delicados como los que hoy estamos llamados a atender --, el juez que suscribe sostuvo que, en ausencia de acuerdo entre los progenitores para establecer el orden en que éstos han de

transmitir sus apellidos a los hijos e hijas habidos entre éstos, debía prevalecer el orden de los apellidos que respondiera al **mejor interés del menor**. Particularmente, a su derecho a la dignidad, a la intimidad, al libre desarrollo de su personalidad y a su propia imagen. Hoy nos reafirmamos en ese enunciado.

Y es que, anteponer, sin más, el apellido paterno al materno frustra todos los esfuerzos -- nacionales e internacionales -- dirigidos a lograr la plena equiparación de la mujer y el hombre en los asuntos de familia.[1] A ello, a frustrar esos esfuerzos, nos oponemos.

Así pues, al acercarnos a esa controversia, -- una muy similar a la que en estos momentos nos ocupa --, en nuestro Voto Particular Disidente en *Cintrón Román v. Jiménez*

---

[1] Así, por ejemplo, y a modo ilustrativo, en el Continente Europeo, en particular en España y en Portugal, en caso de desacuerdo entre los progenitores sobre el orden en que han de transmitir sus apellidos a sus hijos e hijas, la legislación preceptúa que se decidirá de acuerdo con los intereses del hijo o de la hija, es decir, de acuerdo con el interés superior del menor. Ahora bien, en Francia en caso de desacuerdo cuando se establece simultáneamente la filiación, el hijo o hija llevará el primer apellido de cada progenitor sucesivamente por orden alfabético.

De otra parte, en los Estados Unidos, específicamente en los estados de New York, Maine, Massachusetts, New Hampshire y Rhode Island, tanto la legislación, como la jurisprudencia, han establecido el criterio del mejor interés del menor como el factor principal a evaluar en aquellas instancias en las cuales los progenitores no están de acuerdo sobre el orden en que han de asignar sus respectivos apellidos a sus hijos e hijas.

Por último, en lo que se refiere a América Latina en los países de Chile, Colombia y Argentina en caso de no haber acuerdo al momento de inscribir al menor, el orden de los apellidos se determina por sorteo. No obstante, en Argentina si la segunda filiación se establece posteriormente y los progenitores no se ponen de acuerdo, el juez o jueza determinará el orden de los apellidos, según el mejor interés del menor. Mientras que en Colombia cuando la maternidad o la paternidad se declara mediante determinación judicial y no hay acuerdo entre los progenitores, se inscribirá en primer lugar el apellido del padre o madre que primero lo hubiese reconocido como hijo o hija, seguido por el apellido del padre o la madre que hubiese sido vencido en el proceso judicial. Véase, *Cintrón Román v. Jiménez Echevarría et al.*, *supra*, voto particular disidente del Juez Asociado Colón Pérez.

*Echevarría et al.*, *supra*, al hablar del **mejor interés del menor**, en lo relacionado a la falta de acuerdo entre los progenitores respecto al orden en que han de transmitir su primer apellido a sus hijos e hijas, sentenciamos que tal análisis conllevaba necesariamente evaluar, detenida y cuidadosamente, factores como lo son:

> la edad del menor y el tiempo que éste ha utilizado el apellido, la preferencia del niño o niña, el efecto de un cambio de nombre en la relación entre el menor de edad y cada uno de los progenitores, el nivel de apoyo y contacto de los progenitores con el niño o niña, la preferencia del padre o madre custodio, la motivación del progenitor que procura el cambio o del que se opone a dicho cambio, y los vínculos del menor de edad con el patrimonio familiar, étnico, identidad y valores culturales, [entre otros]. *Cintrón Román v. Jiménez Echevarría et al.*, *supra*, voto particular disidente del Juez Asociado Colón Pérez.

Hoy, -- en otra instancia más donde se le ordena al Registro Demográfico de Puerto Rico a modificar el certificado de nacimiento de un menor, en este caso el del menor AMS, para anteponer, sin más, el apellido paterno sobre el materno --, teníamos la oportunidad de, tal y como se ha hecho en varias jurisdicciones de Europa, los Estados Unidos y América Latina, poder pautar lo anterior. Sin embargo, algunos miembros de este Tribunal deciden mirar al lado y, al así hacerlo, el País se queda sin una expresión final de este Alto Foro que ponga fin a este delicado asunto. Vuelve, pues, a perpetuarse el DISCRIMEN, la INEQUIDAD, la INJUSTICIA.

Insistimos, "[l]o anterior, es solo un reflejo más de los mucho que, como sociedad, nos queda por hacer". *Cintrón Román v. Jiménez Echevarría et al.*, *supra*, voto particular

disidente del Juez Asociado Colón Pérez. Esperamos no se nos

haga tarde.


                                    Ángel Colón Pérez
                                      Juez Asociado